STATE OF HAWAII, Plaintiff-Appellee *v.* EDWARD Y. IREBARIA, Defendant-Appellant.

NO. 5356

MARCH 14, 1974

RICHARDSON, C.J., LEVINSON, KOBAYASHI,
OGATA, JJ., LUM, CIRCUIT JUDGE, ASSIGNED
BY REASON OF VACANCY

354

At approximately 2:10 a.m. on March 16, 1971, two persons wearing nylon stockings over their faces and carrying handguns entered and robbed Funai's Union Service Station. Testimony is conflicting as to whether one or both robbers were wearing dark blue jackets, however, at least one of the robbers was wearing such a jacket. The robber who was approximately 5'6" and carrying a .22 caliber semi-automatic pistol fired a shot in the course of the robbery. The other robber was wearing a dark blue jacket and carrying a .38 caliber revolver. Taken in the robbery were currency, loose change, and an envelope containing money, checks and charge card slips. The envelope was dated March 15 and signed "George." One of the victims was kicked by one of the robbers prior to the robbers' escape. A witness standing about 50 yards away from Funai's saw two males approximately 5'5" to 5'7" wearing dark blue or black knee length coats, run from the area of the service station into a parking lot. Later he saw a 1961 Chevrolet with primer spots all over it, which was "misfiring" and running "bad" being driven by the same two persons whom he had seen running into the parking lot. As the car left the parking lot it was "smoking."

At approximately 3:00 a.m., police officers in the area observed a green Chevrolet with primer spots and noticeable smoke emissions. Police converged on the vehicle and at approximately 3:10 a.m. arrested the two occupants, the driver and his passenger, the defendant-appellant. The suspects were properly arrested, informed of their rights and searched. The defendant was found to have $52.80 in cash on his person. The driver of the car possessed $30.09. A brown envelope with "76 Union" printed on it was recovered from the driver's side of the car. The envelope contained $70 in cash, a check, and 76 Union charge card invoices. The total cash estimated lost in the robbery was approximately $152.18. Also recovered from the driver's area was a cut nylon stocking. Recovered from the trunk of the vehicle was a white plastic bag containing a blue jacket, a black jacket, a loaded .38 caliber revolver, a .22 caliber semi-automatic pis-

tol, a clip containing nine .22 caliber cartridges and a box of .38 caliber cartridges.

Investigation at the scene of the crime uncovered a fragment of a .22 caliber bullet, a spent .22 caliber case and a hole in the roof of the service station. Photographs were taken of these and of one of the victim's T-shirts with an imprint of a slipper on the shirt.

At trial, no direct evidence was introduced to show that the gun found in the car in which defendant was riding fired the bullet recovered at the scene. Nor was there any attempt by direct evidence to show that the weapons seized could actually "fire." Also during the trial the following written questions were forwarded to the court by a juror who later became foreman:

1. How many bullets can the clip hold?

2. Were there any fingerprints found on the pistols?

3. Was the .22 caliber bullet fired from the .22 caliber pistol in evidence?

4. Does the imprint on the T-shirt correspond to any of the alledged [sic] robber's footwear?

5. Were there any fingerprints on the envelope marked "George"?

The trial court did not inform either counsel of this message nor did he discuss it with the jury or anyone else. The trial court merely noted on the message: "The Court felt that nothing could be done about these questions and therefore this matter was never discussed before the jury" and entered the slip of paper into the record.

I

Defendant-appellant's first five specifications of error challenge the admissibility of certain evidence. Specifications numbers 1, 2 and 4 may be discussed together since they are susceptible to similar analysis. Defense counsel's argument is that the photographs and fragment of bullet are irrelevant since they do not tie the defendant to the crime. There was "no showing that this bullet was the one that was fired from the gun . . . and this is insufficient to tie this Defendant — to place him present at that time."

The question on appeal is whether or not the evidence admitted over objection had any probative value.

> The test of admissibility is not one of absolute proof of an ultimate fact in controversy but involves the question of relevancy of proof, relevancy not being dependent upon the conclusiveness of the testimony offered, but upon its legitimate tendency to establish a controverted fact. *Bonacon v. Wax*, 37 Haw. 57, 61 (1945) (citations omitted).

Appellant's objection as stated is of course true. There is no showing that the bullet was fired from the gun. Nor was the evidence (independently) sufficient to tie the defendant to the robbery. The concept of relevance, however, does not encompass standards of sufficiency. Appellant's contention that evidence which, standing alone, is insufficient to establish a controverted fact, should be inadmissible is totally without basis in the law. It is often said that "[a] brick is not a wall." McCormick, *Evidence* § 185, p. 436 (2d ed. 1972). Appellant through a "sufficiency" standard would take away the building blocks of a prima facie case. The sufficiency standard should apply only when all the bricks of individually insufficient evidence are in place and the wall itself is tested.

The "legitimate tendency to establish a controverted fact" is all that is required in order that proffered evidence be relevant. *Bonacon v. Wax, supra* at 61. The evidence challenged in this case may not have been relevant to identify the defendant as the perpetrator of the alleged armed robbery. It was however relevant to establish the nature of the crime itself. It was incumbent upon the prosecution to establish a corpus delicti of robbery in the first degree. Robbery in the first degree was at the time of the offense defined as "Robbery by one armed with a dangerous weapon with intent, if resisted, to kill, maim, wound, or inflict other severe corporal injury upon the person robbed; . . . ." HRS § 765-8.[1] There can be no doubt that the evidence objected to tended to raise the proper inferences to establish that robbery in the first degree had been committed by someone. The evidence con-

---

[1] HRS § 765-8 has since been amended in a complete revision of Hawaii's penal code.

cerning .22 caliber bullets, cases and fragments was further relevant to establish the guilt of the accused since one of the other circumstantial bricks of this case was defendant's possession at the time of arrest of a .22 caliber handgun.

Appellant also challenges the admission into evidence of two pistols and ammunition recovered from a car in which defendant was riding, because there was no scientific showing that the two pistols were the ones used in the robbery. We find no legal support for this position. The fact that the two pistols were the same type identified as being used in the robbery is definitely relevant to the identity of the robbers. Likewise, appellant's argument that the evidence, if relevant, is prejudicial, must also fail.[2]

## II

Appellant argues that the State has not met its burden of proof on the charge of unlawful possession of a firearm by a person previously convicted of certain crimes. At the time of the alleged offense HRS § 134-7(b) read "No person who has been convicted in this State or elsewhere, of having committed or attempted a crime of violence, . . . shall own, or have in his possession, or under his control any firearm or ammunition therefor." It is not disputed that a loaded .38 caliber revolver and a .22 caliber automatic together with ammunition for each, were found in the trunk of the car in which defendant was riding. What is disputed is whether or not these items were in fact "any firearm or ammunition therefor."

The term "firearm" is defined by HRS § 134-1:

"Firearm" means any weapon, the operating force of which is an explosive. This definition includes pistols, revolvers, rifles, . . . .

The term "pistol" is further described in the same section:

---

[2] Evans v. State, 188 S.E.2d 861 (Ga. 1972); State v. Anderson, 259 So.2d 310 (La. 1972); Commonwealth v. McLaughlin, 224 N.E.2d 444 (Mass. 1967); People v. Hall, 172 N.W.2d 473 (Mich. App. 1969); see also, 1 Wharton, Criminal Evidence, § 211 pp. 440-441 (13th ed., C. Torcia 1972).

"Pistol" or "revolver" means any firearms of any shape whatsoever with barrel less than twelve inches in length and capable of discharging loaded ammunition or any noxious gas.

The State must prove as essential elements of its case that the weapons involved in this case were "capable of discharging loaded ammunition" or that the ammunition seized was actually loaded. In the case at hand we feel that the State did prove by substantial, albeit circumstantial evidence that defendant possessed a firearm as defined by HRS § 134-1.

Let us proceed through the logical steps necessary to reach the conclusion that the "pistol" in defendant's possession was indeed capable of firing.

The State proved beyond a reasonable doubt that:

1. There was a robbery,

2. A .22 caliber semi-automatic pistol was fired during the robbery, and

3. Defendant was guilty of the robbery.

It stands to reason then that:

1. Since the defendant is the robber, and

2. he was apprehended near the scene less than one hour after the robbery,

3. with a .22 caliber semi-automatic pistol in his possession,

4. the weapon in defendant's possession may reasonably be inferred to be the weapon used in the robbery, and

5. it is thus capable of firing.

We feel that the "evidence of the prosecution is such that 'a reasonable mind might fairly conclude guilt beyond a reasonable doubt.' " *State v. Rocker*, 52 Haw. 336, 346, 475 P.2d 684, 690 (1970). To hold otherwise would be to rule that a conviction could never be sustained on circumstantial evidence for we have seldom seen a circumstantial case as substantial as the one at hand.

III

Appellant's argument that joinder of the charges of Robbery in the First Degree, and Possession of a Firearm by a

Person Convicted of Certain Crimes violates a constitutional protection against self incrimination is totally without merit. Defendant elected as a matter of trial strategy to defend against the joined charges.

IV

Appellant urges that "[i]t was error for the court to fail to respond to questions propounded to him in writing by a juror and to fail to inform either counsel of his receipt of such questions. We disagree.

First, all of the authorities are in accord that any response by the trial court to the jury must be in open court, with all parties and their counsel present. There is, however, no authority for the proposition that the trial court must actually respond to questions from jurors. The general rule is that the trial judge has a duty to respond in open court to questions submitted by jurors regarding the legal standards·to be applied in the case. See *Bollenbach v. United States*, 326 U.S. 607 (1946); *Powell v. United States*, 347 F.2d 156 (9th Cir. 1965); *People v. Kucala*, 288 N.E.2d 622 (Ill. 1972). These cases and many others emphasize the obligation of the trial court "to give the jury the required guidance by a lucid statement of the relevant *legal* criteria. *Bollenbach v. United States, supra* at 612 (emphasis added).

In the case at hand, a juror, during the trial, asked for clarification of a *factual* matter. We know of no case which requires that a trial judge respond to a juror's question concerning the facts of the case. If the trial court had responded in open court to the questions submitted in this case, we have no doubt that the defendant would have objected most strenuously. We feel that it would result in far more prejudice to defendants in general if we were to require a trial court to respond to factual questions submitted by jurors. We are caught in a circle of reversal if we require response to such questions. Response is very likely to result in actual prejudice yet appellant would have the lack of response result in error per se. Are we to reverse every case where a juror submits a question of fact to the trial court?

This is not a court-jury communication case. The submission of factual queries by jurors is much more analogous to the situation where a juror wishes to examine a witness, than to the usual requests for clarification of the law which a trial court is generally obligated to respond to.

The trial judge in this case instructed the jury at the start of the trial that:

> If during the examination of any witnesses some question occurs to you, be patient because the attorneys will probably cover the matter before they finish their interrogation. But if they do not and the question still troubles you and you believe it to be relevant to the inquiry, write your question on a slip of paper and let me have it. If it is a proper question, I will allow the witness to answer it. (Supplemental Record, Transcript of April 4, 1972.) See also, 4 *Jones on Evidence*, § 24.8, pp. 87-89 (6th ed. S. Gard 1972).

This case is essentially a matter of a juror's request to examine a witness which the trial court in its discretion did not act upon. The trial judge quite properly entered the question into the record with the notation that:

> The court felt that nothing could be done about these questions and therefore this matter was never discussed before the jury. (Rec. 83).

Nor do we find error in the trial court's failure to advise counsel of its receipt of the written questions. Had the prosecution been advised of the questions the same circle of reversal would result. The groundwork for an appeal would be laid in the actual prejudice of giving the state an unfair advantage. In our view the trial court charted a most acceptable course. By recording the note in the record the trial judge afforded defendant adequate procedural protection against any prejudice arising out of the juror's question.

Affirmed.

*David W. Hall* (*Hart Sherwood Leavitt Blanchfield & Hall*, of counsel) for defendant-appellant.

*Richard D. Wurdeman*, Deputy Prosecuting Attorney (*Barry Chung*, Prosecuting Attorney, with him on the brief), for plaintiff-appellee.