STATE OF HAWAII, Plaintiff-Appellee *v*. RODNEY PADILLA, Defendant-Appellant

NO. 5717

JULY 12, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR and KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

Defendant appeals from a judgment of conviction of rob-

bery in the first degree. The questions presented by the appeal are: whether the pretrial use of a photographic identification procedure fatally tainted an in-court identification; whether a charge of robbery with a dangerous instrument, based upon use of a firearm, required proof that the weapon was capable of being fired; whether certain arguments made to the jury by the prosecutor constituted impermissible comments on defendant's failure to take the stand; whether, after defendant's counsel had commented on the prosecution's failure to call an eyewitness, the prosecution was entitled to inform the jury that defendant had prevented the prosecution from calling the witness; and whether the jury should have been specially instructed with respect to the reliability of eyewitness identification. We affirm.

The robbery took place on July 22, 1973. The robber entered a cafe, waved and pointed a gun while threatening to kill anyone who moved, seized the manager of the cafe, forced him at gunpoint to open the cash register and departed with an undisclosed amount of currency taken from the cash register. The gun, described in the testimony as a "handgun" and as a "revolver", was not fired during the robbery and there was no evidence of its capability of firing or inflicting harm.

The arresting officer testified, without objection, that while on patrol shortly after the time of the robbery he had received a police broadcast describing a station wagon and its occupants, and that he then noticed a parked vehicle and checked with "dispatch" which confirmed that "this was the vehicle involved" in the robbery. The broadcast had included the information that the vehicle sought had four occupants, including a female driver with blond hair. When the officer approached the car, defendant and two other males were standing to the rear of the station wagon and a female driver with blond hair was in the vehicle. All were placed under arrest. A search of the station wagon disclosed a revolver in a woman's handbag, loose currency totaling $436, and a poncho resembling the one worn by the robber. There was no other testimony linking the revolver and the money found in

the station wagon with the revolver and money involved in the robbery.

Defendant was positively identified in court by an eyewitness as the robber. A second eyewitness testified that defendant had the same characteristics as the person he saw commit the robbery but that he was unable at the time of the trial to say whether or not defendant was the same person. A third eyewitness testified that defendant did not "look like the person" who committed the robbery.

On the fifth day after the robbery, the two eyewitnesses by whom defendant was later identified at the trial were asked to examine three sets of photographs. Each set contained 12 photographs of male individuals and each photograph bore a date at the bottom of the picture. One of the sets contained the photograph of defendant and each of the other sets contained the photograph of one of the two men with whom defendant had been arrested. The photographs of defendant and his two companions bore the date 7/23/73, the day following the robbery, while the other photographs in the three sets bore varying dates, none later than 3/24/73. The set of 12 photographs in which defendant's photograph was placed included two bearing dates of 1/5/73 and none of later date except that of defendant. The eyewitness who failed at the trial to identify defendant as the robber had not been shown the sets of photographs. The eyewitness who supplied the more positive in-court identification of defendant selected defendant's photograph and exhibited no difficulty in making her selection. The eyewitness who was less positive in his identification of defendant first selected two photographs, one of which was the photograph of defendant, and finally selected the photograph of defendant as "more likely" than the other although "he didn't want to commit himself to a positive identification." There was no inquiry at the trial as to whether the witnesses were in any way influenced by the dating of the photographs in making their identifications or whether the witnesses were aware that the photographs bore dates. The eyewitness who more positively identified defendant as the robber testified that she believed that her identifi-

cation was independent of her examination of the photographs but that she was "not really sure." The eyewitness who less positively identified defendant testified that his prior identification of the photograph had "a great deal to do" with his identification of the defendant in court.

Defendant did not take the stand and presented but one witness, who testified only to prior statements of a prosecution witness. The allegedly improper statements of the prosecutor and the jury instructions which the court rejected are described in parts III and IV of this opinion.

I

Defendant contends that the current dates, placed on the photographs of defendant and his two companions, tainted the photographic identification procedure by conveying the suggestion that they were under suspicion and thus increased the likelihood of misidentification. It is clearly possible that both of the identifying eyewitnesses were assisted by their recollection of the prior photographic identifications in arriving at their in-court identifications. If they had been led by the suggestiveness of the dates on the photographs to erroneously select the photograph of defendant, the later in-court identifications could have been the result of the prior error and not entitled to belief. The danger that the use of photographic identification procedures may result in misidentification at trials has troubled the courts. It is now clear that the use of eyewitness identification at the trial may deny a defendant due process of law and require reversal where the in-court identification was preceded by an impermissibly suggestive photographic display to the witness.

The applicable rule was announced in *Simmons* v. *United States*, 390 U.S. 377, 384 (1968), as follows:

> [W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly

suggestive as to give rise to a very substantial likelihood of irreparable misidentification.[1]

The rule of *Simmons* was applied to a stationhouse showup in *Neil* v. *Biggers*, 409 U.S. 188 (1972), where it was held that the admission of evidence of a suggestive confrontation does not in every instance offend due process, and that testimony of an out-of-court identification was properly received, despite suggestiveness in the procedure, where examination of the record before it convinced the Court that there was no substantial likelihood of misidentification. In so holding, the Court laid down criteria for evaluating the effect of a suggestive pretrial identification procedure which are equally applicable to photographic identification:

> We turn, then, to the central question, whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. . . . (409 U.S. at 199, 200.)

Evaluation of the facts of the present case in light of these factors[2] leads us to the conclusion that the photographic identification procedure employed here, even though it "may have in some respects fallen short of the ideal" as in

---

[1] The rule stated in Simmons is premised upon the Court's conclusion that initial identification of suspects by photograph has been used widely and effectively in criminal law enforcement and should not be prohibited either in the exercise of the supervisory power of the court or as a matter of constitutional requirement.

[2] In United States v. Ash, 413 U.S. 300 (1973), the Court refused to engage in an evaluation of a photographic identification procedure without the assistance of additional findings by the trial court. However, the photographic identification had been made almost three years after the crime, and the robbers had worn stocking masks. We do not consider that the Court receded from the rules laid down in Simmons and in Neil.

*Simmons*, did not deny defendant due process of law or call for reversal of the judgment of conviction. The witnesses who identified defendant had ample opportunity to observe the robber at the time of the crime and gave attention to their observation with a view to later identification of the robber. Their prior descriptions of the criminal are not substantially inconsistent with the appearance of defendant in his photograph. The level of certainty demonstrated by each of these witnesses upon examination of the photographs was not materially different from the level of certainty displayed at the in-court identification. The length of time between the crime and the photographic display was short, so that the recollection of the witnesses at the time of examination of the photographs was quite fresh. The element of suggestiveness present in the fact that the photographs of defendant and his two companions bore current dates was minimal. At most, the dates directed the attention of the witnesses to three of the photographs, and the witnesses were still required to make uninfluenced choices among the three.[3]

Since each case must depend on its facts, we do not consider it necessary to engage in an extended review of the decisions. We hold that the photographic identification procedure here did not give rise to substantial likelihood of misidentification and did not deny due process of law to defendant.[4]

II

Robbery in the first degree is defined by HRS § 708-840, in relevant part, as follows:

Sec. 708-840 — *Robbery in the first degree.*

---

[3] In Powell v. State, 478 P.2d 923 (Okla. Crim. 1971), the court emphasized the prior opportunity of the witness to observe the alleged criminal act and held, applying the rule in Simmons, that the defendant was not denied due process where the witness making the in-court identification had been shown three pictures shortly after the crime and had picked out defendant's picture.

[4] *See* Annot., *Admissibility of Evidence of Photographic Identification as Affected by Allegedly Suggestive Identification Procedures,* 39 A.L.R. 3d 1000, 1012 (1971); Pulaski, *Neil v. Biggers: The Supreme Court Dismantles the Wade Trilogy's Due Process Protection,* 26 STANFORD LAW REVIEW 1097 (April 1974).

(1) A person commits the offense of robbery in the first degree if, in the course of committing theft: ·

\* \* \* \*

(b) He is armed with a dangerous instrument and:

\* \* \* \*

(ii) He threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.

(2) As used in this section, "dangerous instrument" means any firearm, or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or threatened to be used is capable of producing death or serious bodily injury.

\* \* \* \*

Defendant contends that there was failure in the proof of an essential element of the government's case in that there was no proof that the gun carried by the robber was loaded or capable of being fired. Defendant asserts that the weapon used in the robbery was in the possession of the government between the time of the arrest and trial and could have been test fired to determine if it was capable of being fired. However, there was no evidence that the gun found in the station wagon after the crime was the weapon used in the robbery, and we must consider defendant's argument on the premise that the whereabouts of that weapon is unknown.[5]

In prosecutions under 18 U.S.C. § 2113(d), for "[putting] in jeopardy the life of any person by the use of a dangerous weapon" while committing robbery of certain federal institutions, it is regularly held that it is sufficient to establish that a gun was used in the robbery without need to prove that the gun was loaded or otherwise operable. Some of the decisions

---

[5] In State v. Irebaria, 55 Haw. 353, 519 P.2d 1246 (1974), we held admissible in evidence two guns found in a car in which defendant was riding, where they were identified as the same caliber and type as those used in the robbery. Such identifying evidence is not present here.

appear to place this conclusion upon a construction of the statute. *See* e.g., *Baker* v. *United States,* 412 F.2d 1069 (5th Cir. 1969); *United States* v. *Shelton,* 465 F.2d 361 (4th Cir. 1972). Other decisions have taken the position that "[where the] robber displays a gun to back up his demands, he wants his victim to believe that it is loaded, and the fact-finder may fairly infer that it was." *Wagner* v. *United States,* 264 F.2d 524, 530 (9th Cir. 1959). *Also see United States* v. *Marshall,* 427 F.2d 434 (2d Cir. 1970); *Lewis v. United States,* 365 F.2d 672 (10th Cir. 1966); *Miller* v. *State,* 189 A.2d 118, 231 Md. 158 (1963).

There was uncontroverted testimony that the robber entered the cafe, waved and pointed a gun and compelled acquiescence in the robbery by threats to kill. In the absence of evidence that the gun was not loaded or was not capable of being fired, an inference exists that it was loaded and capable of inflicting the harm which the robber threatened by his actions. There was no failure of proof that the gun carried in the robbery was a dangerous instrument within the meaning of HRS § 708-840 of the Penal Code.[6]

### III

Defendant asserts that the prosecutor, in her argument to the jury, commented impermissibly on defendant's failure to testify. The language with respect to which defendant complains was as follows:

You will also get an instruction that you should not

---

[6] It is not necessary for the purposes of this case to consider whether the elements of the offense of robbery in the first degree would be made out if there were proof that a firearm used in the robbery was unloaded or otherwise incapable of being fired or that the robbery was effected with a toy or simulated gun, bomb or other device. Also, there is no occasion to consider the relationship between the proof required to establish robbery in the first degree and that which we stated in State v. Irebaria, 55 Haw. 353, 519 P.2d 1246 (1974), to be required to establish the offense defined in HRS § 134-7(b), the essential element of which was the ownership, possession or control of a firearm. The applicable definition of "firearm", we there declared, required the State to prove that the weapon was capable of discharging loaded ammunition. The inferences which may be drawn from the facts established in this case would be sufficient to discharge this burden of proof if it were applicable.

draw any conclusion of the fact that the defendant did not take the stand. That is true. The defendant doesn't have to prove anything. But in view of the fact that prosecution has proved way beyond a reasonable doubt, what are we to conclude? Nothing, except that he's guilty. Where are the defendant's friends? . . .

The test to be applied is whether the language used was "manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States* v. *Wright*, 309 F.2d 735, 738 (7th Cir. 1962). The prosecution is entitled to call attention to the fact that the testimony of the witnesses for the prosecution has not been controverted, unless the circumstance that the defendant is the only one who could possibly contradict that testimony would necessarily direct the jury's attention solely to the defendant's failure to testify. *Walsh* v. *United States*, 371 F.2d 135 (9th Cir. 1967); *Ruiz* v. *United States*, 365 F.2d 103 (10th Cir. 1966); *Bary* v. *United States*, 248 F.2d 201 (10th Cir. 1957).

During her closing argument, the prosecutor made the following statement, without objection:

The prosecution rested. We wanted to bring you Jerry Tamashiro and the person who saw the getaway car just to round out the case. Defense objected because I had closed. That's within his rights. However, I submit that this is what I mean when I say we have presented all available and admissible testimony to you. It's a matter of style. . . .[7]

---

[7] The prosecution rested its case on May 23, 1974, after a somewhat confusing colloquy between court and counsel from which it may be inferred that the prosecutor had been intending to call as a witness Jerry Tamashiro, who had been identified in the testimony as the manager of the cafe, but was unable to present him that day. Some reference was made to possibly proceeding with the witness on the following morning, with which the court refused to concur. The prosecution's case was then rested, although the trial did not actually proceed until May 29, 1974 for reasons which are not disclosed in the record. When the case was called, the prosecutor sought to reopen in order to present the testimony of Jerry Tamashiro and that of a witness who allegedly saw the getaway car. Defendant's counsel having objected, the reopening was refused and the prosecution was denied the opportunity to present the two witnesses.

Two other comments on defendant's objection to the reopening of the prosecutor's case came in the form of objections to statements made in defendant's closing argument. During his closing argument defendant's counsel referred to the fact that certain persons who had been present at the scene of the robbery had not been called as witnesses by the prosecution. When Jerry Tamashiro was mentioned, the prosecutor objected, saying "I object to that since David Hall kept his testimony out, your Honor." The objection was overruled. Defendant's counsel then argued to the jury that they should infer that Jerry Tamashiro could not identify defendant, "because if he could identify, he would have been called by the prosecution." The prosecutor again objected, saying: "I called Jerry Tamashiro. The defense did not have to object." This objection was also overruled. In her rebuttal argument, the prosecutor informed the jury that comments by the attorneys were not evidence, and went on to say:

> However, I think it goes a bit far for a defense attorney to exercise his rights to exclude one of my witnesses and then say — try to tell you what that witness would have said, and because he excluded him, maybe it was favorable. I think that's ridiculous.

Thereupon, at the request of defendant's counsel, the court instructed the jury "to disregard the prosecutor's remark as to the exclusion of Jerry Tamashiro as a witness in this case."

Defendant contends that each of the comments of the prosecutor quoted in the preceding paragraph was improper, and that their prejudicial effect was not removed by the court's instruction to the jury. While four remarks of the prosecutor are complained of, they are all embraced in the prosecutor's statement in her rebuttal argument. Suitably paraphrased, the prosecutor's argument to the jury was to the effect that no inference that the testimony of Jerry Tamashiro would be adverse to the prosecution (as argued to the jury by defendant's counsel) should be drawn from the prosecution's failure to present him as a witness, since the prosecution had shown its willingness to have the jury hear his testimony and had been prevented from offering it by the objection of defen-

dant and the court's ruling thereon. The prosecutor did not assert that the objection and ruling were not proper.

By making reference in his closing argument to the failure of the prosecution to call Jerry Tamashiro, defendant's counsel obviously was invoking a rule which has been stated by McCormick as follows: "When it would be natural under the circumstances for a party to call a particular witness, . . . and he fails to do so, tradition has allowed his adversary to use this failure as the basis for invoking an adverse inference." The author adds the caveat: "Despite the plenitude of cases supporting the inference, caution in allowing it is suggested with increasing frequency." And by footnote: "The party is, of course, entitled to explain the nonproduction." MCCORMICK, EVIDENCE 656, 657 (2d ed. 1954). In commenting upon the unfavorable inferences which may be drawn from a failure to produce evidence, Wigmore states a similar qualification: "These inferences . . . are also open always to explanation by circumstances which make some other hypothesis a more natural one than the party's fear of exposure" and "the party affected by the inference may of course explain it away by showing circumstances which otherwise account for his failure to produce the witness." 2 WIGMORE ON EVIDENCE §§ 285(1), 290(3) (3d ed. 1940).

In *Pierre v. Galloway*, 96 So. 2d 916 (La. App. 1957), the plaintiff in an action for personal injuries suffered in an automobile accident relied upon a presumption that the testimony of an adult passenger in defendant's vehicle, who was not produced as a witness at the trial, would have been unfavorable to the defendant. The court said:

Such presumption seems inapplicable under the facts of this case, where the defendants had the witness available to testify on the date the case was initially set for trial, but were refused a continuance for such purpose when said witness failed to appear at a subsequent date to which the trial was continued; and when their request to have the note of evidence reopened to take said testimony, when plaintiffs raised the issue at their trial brief, was refused. (96 So.2d at 917).

In *Case* v. *New York Central Railroad Company*, 329 F.2d 936 (2d Cir. 1964), plaintiff sought to draw a favorable inference from the fact that the defendant railroad did not call as witnesses other employees who were present at the accident in which plaintiff was injured. It was held that the defendant was entitled to introduce hearsay statements of the missing employees to the effect that they knew nothing about the accident, "to show that the Central reasonably believed that none of the men working in the yard had any knowledge and their non-production thus could not properly be attributed to fear of their testimony." (p. 938)

As stated in *State* v. *Clawans*, 38 N.J. 162, 183 A.2d 77 (1962), the inference from failure to produce evidence "is always open to destruction by explanation of circumstances which make some other hypothesis a more natural one than the party's fear of exposure." (p. 81)

In the present case, the attempt of defendant's counsel to persuade the jury to draw an adverse inference from the prosecution's failure to produce the manager of the cafe as a witness was one which the prosecution was entitled to counter by placing the fact of the. exclusion of the witness before the jury.

## IV

Defendant requested instructions, which were refused by the trial court, relating to the weight to be given to identification testimony, the likelihood of error in identification and the caution with which the jury should consider such testimony. Defendant contends that the court's failure to give the requested instructions was reversible error. The instructions given by the trial court covered the subject of the credibility of witnesses and the weight to be given to their testimony.

Defendant relies upon several decisions which have supported the desirability, where identification is a key issue, of a special instruction emphasizing to the jury the need for finding that the circumstances of the identification are con-

vincing beyond a reasonable doubt. See *United States* v. *Barber*, 442 F.2d 517 (3d Cir. 1971); *United States* v. *Fernandez*, 456 F.2d 638 (2d Cir. 1972); *United States* v. *Telfaire*, 469 F.2d 552 (D.C. Cir. 1972). Only in *Fernandez* did the court find that failure to give the requested instruction was prejudicial error, and the court noted that this would depend on the circumstances of the particular case. In *Barber*, the court noted the "formidable precedential authority" supporting refusal of the trial court to give the special instruction and held there was no trial error, although directing prospective use of such instructions. In *Telfaire*, similar prospective admonitions were given, but the court was satisfied that the attention of the jury was "significantly focused" on the issue of identity and used language which we consider applicable to the present case:

> [I]n the circumstances of a particular case, the proof, contentions and general instructions may have so shaped the case as to convince us that in any real sense the minds of the jury were plainly focused on the need for finding the identification of the defendant as the offender proved beyond a reasonable doubt.

The giving of special instructions on identification has been regarded as within the discretion of the trial judge or superfluous in the light of adequate general instructions. *United States* v. *Sambrano*, 505 F.2d 284 (9th Cir. 1974); *United States* v. *Amaral*, 488 F.2d 1148 (9th Cir. 1973); *United States* v. *Evans*, 484 F.2d 1178 (2d Cir. 1973); *United States* v. *Moss*, 410 F.2d 386 (3d Cir. 1969); *State* v. *Ollison*, 16 Ore. App. 544, 519 P.2d 393 (1974); *State* v. *Taylor*, 109 Ariz. 267, 508 P.2d 731 (Ariz. 1973).

Here the cross-examination of the prosecution witnesses, the arguments to the jury. and the general instructions given by the court adequately directed the jury's attention to the identification evidence and made unnecessary the more specific instructions requested by the defendant.

The court did not abuse its discretion in refusing the requested instructions.

The judgment of conviction is affirmed.

*David W. Hall (Hart, Leavitt & Hall* of counsel) for Defendant-Appellant.

*Reina A. Grant,* Deputy Prosecuting Attorney, for Plaintiff-Appellee.