CONCURRING AND DISSENTING OPINION BY
NAKAYAMA, J.
IN WHICH RECKTENWALD, C.J., JOINS
I agree with the Majority to the extent that it holds that: (1) “alcohol” within the meaning of Hawaii Revised Statutes § 291E-1 (2007 & Supp. 2012) is not limited to alcohol produced through distillation; (2) the State was not required to include the statutory definition of “alcohol” in the complaint against Tsujimura; (3) an individual’s right to remain silent under article I, section 10 of the Hawaii Constitution inures at least at the point at which a person has been seized; and (4) the State may not elicit evidence of a defendant’s prearrest silence as substantive evidence of the defendant’s guilt.
I part with the Majority in its application of the last of the foregoing principles to the present case. The State’s question concerning whether Tsujimura told Officer Billins that his leg injuries would have prevented him from getting out of the car was not an improper comment on Tsujimura’s right to remain silent. In my view, the State’s question sought to elicit information with the purpose of pointing out a shortcoming in the defendant’s exculpatory evidence. The State’s question neither implied that an innocent person in Tsujimura’s position would not have remained silent, nor insinuated that Tsujimura’s silence, in and of itself, was suggestive of his guilt. Furthermore, even assuming that the comment was an improper comment on Tsujimura’s silence, the comment was harmless beyond a reasonable doubt.
Accordingly, I respectfully dissent.
A. The elicited statement did not constitute an improper comment on Tsujim-ura’s right to remain silent.
In State v. Padilla, this court established that whether a prosecutor has impermissibly commented on a defendant’s failure to testify is determined by “whether the language used was ‘manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.’” 57 Haw. 150, 158, 552 P.2d 357, 362 (1976) (quoting United States v. Wright, 309 F.2d 735, 738 (7th Cir. 1962)), abrogated on other grounds by State v. Cabagbag, 127 Hawai'i 302, 277 P.3d 1027 (2012). The Majority states, and I agree, that in State v. Rodrigues, 113 Hawai'i 41, 147 P.3d 825 (2006), this court “adjusted and particularized the Padilla framework to make it more suitable for application in situations where the challenged ‘comment’ is made during a question-and-answer exchange between a prosecutor and a witness.” Majority Opinion at 315, 400 P.3d at 516. Moreover, the Majority correctly observes that “the core of the analysis is predicated upon the prosecution’s purpose in eliciting the contested evidence.” Majority Opinion at 315, 400 P.3d at 516. Specifically, the test requires courts to determine whether the State intended “to imply the defendant’s guilt” when the State elicited the question referencing the defendant’s silence. Majority Opinion at 315, 400 P.3d at 516.
Applying the foregoing test to the present case, the Majority states:
By eliciting the fact that Tsujimura did not say anything about his injury while he exited his car, it was clear that the State’s purpose was to imply that Tsujimura’s injuries did not physically inhibit him from performing the FSTs and to inferentially establish that Tsujimura’s diminished faculties during the FSTs were a product of intoxication and not influenced by his injuries.
Majority Opinion at 316, 400 P.3d at 517. Therefore, the Majority concludes that the State “intended for the exchange between the prosecutor and Officer Billins to adduce information about Tsujimura’s prearrest silence as substantive proof of his guilt.” Majority Opinion at 316, 400 P.3d at 517.
I believe that the Majority’s application of the Rodrigues test is erroneous. In my view, the Rodrigues analysis requires courts to discern whether the State sought to imply a defendant’s guilt by virtue of the very fact that the defendant was silent. In other words, the inquiry revolves around whether the State elicited the information to suggest that an innocent person in the defendant’s position would have spoken up or reacted *321 differently, such that the defendant’s silence, in and of itself, was indicative of his or her guilt. This test does not preclude the State from eliciting information that inferentially leads to other facts that are completely separate and distinct from the fact of the defendant’s silence and, in doing so, identifying the gaps in the defendant’s theory of the case or other exculpatory evidence that the defendant has adduced at trial.
This application of the Rodrigues test is consistent with the analysis that the Rodri-gues court itself utilized. In Rodrigues, this court held that the State’s question seeking to elicit information regarding the fact that the defendant declined to agree to an audio-taped reiteration of his interview with a police officer did not constitute an improper comment on his right to remain silent. 113 Hawai'i at 50, 147 P.3d at 834. This court reasoned:
In the present matter, the prosecution merely elicited the fact, without further comment, that, following a full, voluntary explanation of how he came to possess the welder and trailer, Rodrigues declined to agree to an audiotaped reiteration of his statement to Detective Kanemitsu. On the record before us, it is apparent that the question was posed, and the information elicited, as part of the prosecution’s effort to maximize the reliability of Detective Kanemitsu’s recollections and to explain why the detective could only rely on his notes and not an audiotape of the interview, that is, because Rodrigues declined to make such a tape. And the prosecutor’s question, part of a line of inquiry designed to establish the detective’s custom and practice regarding accurately transcribing such statements, was unaccompanied by any implication of guilt with respect to Rodrigues’s unwillingness to be audio-taped.
Id. at 49-50, 147 P.3d at 833-34 (emphasis added). In short, this court reasoned that the elicited statement was not improper because it did not imply that Rodrigues was guilty by virtue of his unwillingness to be recorded. Id. Rather than implying guilt through the defendant’s silence itself, the question sought to elicit information supportive of other facts that were relevant to the case. Id. Namely, the question sought to explain why Officer Kanemitsu’s testimony was largely based off of his notes, the reliability of which defense counsel heavily criticized on cross-examination and during the defense’s closing argument. Id. at 46-47, 49-50, 147 P.3d at 830-31, 833-34. Therefore, the Rodrigues court’s analysis reflects that the Rodrigues test requires courts to evaluate whether the State elicited evidence of the defendant’s silence as direct evidence of the defendant’s culpability, or whether the State sought to legitimately illustrate other relevant facts by virtue of the defendant’s lack of verbal communication,
A proper application of the Rodrigues test to the present case reveals that the State’s question regarding whether Tsujimura had said that his ability to exit the car was impacted by his leg injuries did not constitute an improper comment on his right to remain silent. During Officer Billins’ direct examination, Officer Billins testified about his observations regarding Tsujimura’s actions as he exited his vehicle:
Q And after you made those observations, did you ask the defendant if he was willing to participate in a field sobriety test?
A I informed him that I could smell an odor of alcoholic type beverage emitting from his breath and requested that he participate in a field sobriety test.
Q And what was the defendant’s response?
A He immediately got out of his vehicle.
Q Were you able to make any observations about the defendant’s ability to get out of his vehicle?
A At this time he—he got out of his vehicle normally. I didn’t see him fall down or anything.
The district court then asked Officer Billins about whether Tsujimura fell down as he exited the vehicle:
THE COURT: [Deputy prosecuting attorney], I’m sorry to interrupt you. Can you go back to the question that [deputy prosecuting attorney] asked about the defendant coming out of his ear? Officer Bil- *322 lins, I think you testified that you didn’t see the defendant fall down.
THE WITNESS: Yes.
THE COURT: Just so we’re clear, did he fall?
THE WITNESS: No. He did not fall—
THE COURT: He was able to come out of the car without a problem?
THE WITNESS: Yes.
THE COURT: Thank you.
On cross-examination, defense counsel questioned Officer Billins extensively about whether Tsujimura’s injuries may have impacted his performance on the field sobriety test. Notably, defense counsel elicited two concessions from Officer Billins: that Officer Billins had “no idea whether raising a leg puts more physical strain on your ACL than keeping it planted” and that he had “no idea whether [Tsujimura’s] knee injury or ACL injury affected his ability to perform the field sobriety test[.]” Then, finally, on redirect examination, the State again asked Officer Bil-lins about his observations concerning Tsu-jimura’s ability to exit the vehicle despite having injuries to his leg:
Q Officer, when you demonstrated the test—actually I’ll back up for a moment. You testified that when the defendant left the car he didn’t have any difficulty exiting the car.
A Yes.
Q So did the defendant at that time explain to you he couldn’t get out of the car because of an ACL injury?
[DEFENSE COUNSEL]: Objection, Your Honor. It comments on defendant’s light to remain silent.
THE COURT: It’s overruled. Let’s see if the statement comes out. Go ahead and answer the question.
BY [THE STATE]:
Q Do you recall if the defendant indicated to you he would have difficulty exiting the car because of his previous leg injury?
A No statements were made.
(Emphases added.)
Viewed properly in context, the State’s question elicited, without further comment, the fact that just as Officer Billins observed that Tsujimura did not physically demonstrate any signs of difficulty exiting his car, Officer Billins also observed that Tsujimura did not verbally indicate that he had any trouble alighting from his vehicle just prior to taking the field sobriety test. Based on the record, it appears that the State did not elicit this information to insinuate that Tsujimura was guilty simply because he had remained silent about his injuries; the question did not imply that an innocent person in Tsujimura’s position would have spoken up about his leg injuries. Instead, it appears that the State’s purpose in posing the question was to legitimately prove a fact that subverted the defense’s exculpatory evidence: the State sought to prove that Tsujimura did not demonstrate any signs of discomfort or difficulty in exiting his vehicle, which undermined the defense’s evidence tending to support that Tsujimura’s leg injuries may have impacted his performance on the field sobriety test.
The Majority takes issue with the foregoing application of the Rodrigues test because, in its view, “direct and indirect use of a defendant’s silence has the same ultimate effect: it serves as a mechanism for the State to imply the defendant’s guilt. The only difference between the two is the level of blatancy.” Majority Opinion at 317, 400 P.3d at 518. Accordingly, the Majority posits: “Whether silence is used (Erectly or indirectly, the person against whom the silence is used would be punished for exercising a constitutional right in the same manner and to the same extent: under either instance, the person’s silence would ultimately bear upon the determination of his or her guilt.” Majority Opinion at 318, 400 P.3d at 519 (emphasis added).
I disagree insofar as I do not believe that using a defendant’s silence to support a collateral fact that is ancillary, though relevant, to the defendant’s guilt punishes a defendant for exercising his or her right to remain silent “in the same manner and to the same extent” as using the defendant’s silence to directly imply his or her guilt. In the latter situation, the State intends for the jury to directly infer from the defendant’s silence—a fact that has no bearing on whether the elements of the offense were met—that the defendant is guilty. In such a circumstance, *323 the State comments on the very fact that the defendant remained silent and undoubtedly, and severely, punishes the defendant for exercising his or her constitutional right to remain silent by directing the fact finder to focus on the defendant’s silence itself and whether the defendant was culpable because silence was incompatible with innocence. See, e.g., State v. Wakisaka, 102 Hawai'i 504, 515-16, 78 P.3d 317, 328-29 (2003); State v. Mainaaupo, 117 Hawai'i 235, 253-54, 178 P.3d 1, 19-20 (2008).
By contrast, when a defendant’s lack of verbal communication is used to illustrate an ancillary fact that is separate and distinct from the defendant’s guilt, but may nonetheless be probative of the strength of the defendant’s theory of the case, several inferential steps separate the defendant’s silence from the ultimate conclusion that he or she is guilty. Further, the prosecutor’s comment does not direct the fact finder to fixate on the defendant’s silence itself, but on a collateral fact such as the defendant’s physical state (as was the case here) or state of mind. Accordingly, in my view, when the State elicits the fact of the defendant’s lack of verbal communication in this context, where an attenuated analytical relationship exists between a defendant’s silence and guilt, such comment does not “punish [the defendant] ... in the same manner and to the same extent” as using his or her silence as direct evidence of guilt.
The Majority also contends that my application of the Rodrigues test in this case is “in direct contravention of this court’s precedents” and “is not supported by Rodrigues.” Majority Opinion at 318, 400 P.3 at 519. Again, I respectfully disagree.
For the most part, this court has held that a prosecutor improperly commented on a defendant’s refusal to testify in circumstances where the prosecutor drew a direct connection between the defendant’s silence and his or her guilt. See, e.g., Wakisaka, 102 Hawai'i at 515-16, 78 P.3d at 328-29 (concluding that a prosecutor’s remark improperly commented on the defendant’s failure to testify because it reminded the jury that the defendant did not testify and implied that the defendant was withholding information from the jury); Mainaaupo, 117 Hawai'i at 252-55, 178 P.3d at 18-21 (holding that a prosecutor’s comment during closing argument that an innocent person would not have failed to disclose certain facts improperly commented on the defendant’s right to testify). This court has not indicated that a prosecutor is prohibited from eliciting information regarding the defendant’s silence when the defendant’s lack of verbal communication could support a collateral fact other than the defendant’s guilt itself.
Additionally, I believe that my analytical framework is consistent with Rodrigues. In support of its conclusion that the prosecutor did not improperly comment on the defendant’s failure to testify, this court observed that “the prosecutor’s question, part of a line of inquiry designed to establish the detective’s custom and practice regarding accurately transcribing such statements, was unaccompanied by any implication of guilt with respect to Rodrigues’s unwillingness to be audiotaped.” Rodrigues, 113 Hawai'i at 49-50, 147 P.3d at 833-34 (emphasis added). In my view, a plain reading of this language indicates that, consistent with this court’s precedent and my application of the Rodrigues test, the Rodrigues court concluded that the comment was permissible because the comment did not directly imply the defendant’s guilt from his unwillingness to be recorded. The Rodrigues court did not suggest that commenting on the defendant’s silence to support a collateral fact, separate from though possibly relevant to the defendant’s guilt, was impermissible.
To conclude, the State’s question sought to prove that Tsujimura did not have any difficulty exiting his vehicle; Tsujimura neither fell out of his vehicle, nor did he verbally express any difficulty in alighting from his car. Without further comment, the State did not suggest that an innocent person in Tsu-jimura’s position would not have remained silent, such that Tsujimura’s silence, by itself, demonstrated that he was guilty. Accordingly, the State did not use Tsujimura’s silence as direct substantive evidence of guilt. Rather, the State inquired into Tsujimura’s verbal omission to support a legitimate fact that was distinct from the fact of Tsujimura’s silence, *324 and thereby challenged the defendant’s exculpatory evidence. Therefore, I believe that the State’s question was not an improper comment on Tsujimura’s right to remain silent.
B. Assuming that the elicited statement improperly commented on Tsujimu-ra’s right to remain silent, such comment was harmless beyond a reasonable doubt.
Even assuming that the prosecutor improperly commented on Tsujimura’s right to remain silent, the question remains whether the comment was harmless beyond a reasonable doubt. See Mainaaupo, 117 Hawai'i at 247, 178 P.3d at 13. The harmless beyond a reasonable doubt standard “requires an examination of the record and a determination of whether there is a reasonable possibility that the error complained of might have contributed to the conviction.” Id. (quoting State v. Iuli, 101 Hawai'i 196, 204, 66 P.3d 143, 161 (2003)).
The Majority states that the State’s question was not harmless beyond a reasonable doubt because “the district court rendered its verdict in partial reliance upon Officer Bil-lins’ testimony that Tsujimura did not say anything about his injury when he exited his car.” Majority Opinion at 318, 400 P.3d at 519. In particular, the Majority emphasizes that as the district court rendered its verdict, the district court acknowledged that “[w]hen Mr. Tsujimura was asked to participate in a field sobriety test, Mr. Tsujimura did indicate that there was—that there was an injury to his left leg. When he alighted from the car, he did not indicate any difficulty walking when he did come out of the car.” Majority Opinion at 317, 400 P.3d at 518 (emphasis added).
The Majority’s position is problematic because the district court did not necessarily rely on Tsujimura’s silence in finding that “[w]hen he alighted from the car, he did not indicate any difficulty walking.” As discussed in section A, supra, on direct examination, Officer Billins testified that Tsujimura did not fall down as he exited his vehicle. Furthermore, the district court also directly questioned Officer Billins about whether he had observed Tsujimura fall out of the car or otherwise experience any other difficulty in exiting the car. And, on redirect examination, Officer Billins reasserted that Tsujimura did not have any difficulty in exiting the car. Therefore, the district court’s finding that “[w]hen he alighted from the car, he did not indicate any difficulty walking” did not rest solely upon the State’s comment on Tsujimu-ra’s right to remain silent. The district court’s finding was amply supported by other portions of Officer Billins’ testimony.
The Majority also contends that the district court likely relied on Officer Billins’ reference to Tsujimura’s prearrest silence because “the distinct court’s statement, naturally read, was a description of Tsujimura’s failure to speak about any difficulty walking as he was exiting his car and during his interaction with Officer Billins.” Majority Opinion at 319, 400 P.3d at 420. According to the Majority, because the district court previously used the word “indicate” to refer to Tsujimura’s verbal communication in a prior finding of fact, the district court’s “use of ‘indicate’ [in its finding regarding Tsujimu-ra’s difficulty walking after he alighted from the car] in all likelihood pertained to Tsujim-ura’s oral responses or lack of responses to Officer Billins during their interaction.” Majority Opinion at 319, 400 P.3d at 520.
The Majority’s analysis on this point is unpersuasive. The word “indicate” is defined broadly: “To point out; to discover; to direct to a knowledge of; to show; to make known.”[1] That the district court may have used the word “indicate” to refer to Tsujim-ura’s verbal communication in one of its findings of fact does not mean that the district court used this general term in the same manner in another finding. Considering that the district court sua sponte questioned Officer Billins specifically as to whether Tsujimura fell as he was exiting his vehicle immediately after Officer Billins testified to Tsujimura’s actions as he alighted from his car, I do not believe that the dis *325 trict court relied upon the State’s fleeting question regarding Tsujimura’s lack of verbal communication to support its finding that: ,£When he alighted from the car, he did not indicate any difficulty walking when he did come out of the car.”
Furthermore, in viewing the record as a whole, it appears that the State’s question regarding Tsujimura’s silence about his leg injuries was harmless beyond a reasonable doubt. The district court based its guilty verdict upon the following findings: (1) Officer Billins, more than once, observed Tsujim-ura’s car enter the shoulder lane to the point that Tsujimura’s vehicle straddled two lanes; (2) approximately eight seconds passed in between the time Officer Billins turned on his lights to signal Tsujimura to stop and the time that Tsujimura actually stopped his vehicle; (3) upon approaching the vehicle, Officer Billins observed that Tsujimura’s face was flushed red, that his speech was slurred, that he had red and watery eyes, and that he had alcohol on his breath; (4) Tsujimura participated in a field sobriety test; (5) Tsujimu-ra had an injury to his left leg; (6) Tsujimura did not demonstrate any difficulty alighting from his car or walking after exiting the car; (7) Tsujimura had difficulty balancing as Officer Billins administered the “eye test” component of the field sobriety test; (8) Tsujimu-ra broke his stance twice and had difficulty keeping his balance with one foot in front of the other while attempting to complete the walk-and-turn test; and (9) during the one-legged raise test, Tsujimura was unable to keep his hands up to his side, and was also unable to keep the foot that he selected to raise off the ground six inches in the air.
In short, the State only asked one question concerning Tsujimura’s silence about his ACL injury and the impact it might have had on his ability to exit the vehicle. The State did not follow-up on the question after it was asked. The contested question elicited information which may have supported one of the district court's findings of fact: that Tsujimu-ra did not have difficulty alighting from his vehicle or walking shortly thereafter. However, this fact was also sufficiently supported by other evidence adduced at trial. Moreover, the district court’s final ruling rested on several other facts that tended to support that Tsujimura had been operating his vehicle under the influence of an intoxicant with such diminished mental faculties that he was incapable of guarding against casualty, all of which were amply grounded in other evidence at trial besides the fleeting question regarding Tsujimura’s silence about his leg injuries. Therefore, in my view, even if the contested question by the State constituted an improper comment on Tsujimura’s right to remain silent, the comment was harmless beyond a reasonable doubt.
Accordingly, I would affirm Tsujimura’s conviction and sentence.