STATE OF HAWAII, Plaintiff-Appellee, *v.* EDWIN MARQUIS CALDEIRA, JR., also known as Buster, Defendant-Appellant

NO. 6984

STATE OF HAWAII, Plaintiff-Appellee, *v.* RAYMOND DOUGLAS FULP, Defendant-Appellant

NO. 6994

STATE OF HAWAII, Plaintiff-Appellee, *v.* CHARLES K. POKIPALA, also known as Poki, Defendant-Appellant

NO. 7014

NOVEMBER 9, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ.,
RETIRED JUSTICES MARUMOTO AND KOBAYASHI
ASSIGNED BY REASON OF VACANCIES

*Per Curiam.* S.C.No. 6984, State of Hawaii *v.* Edwin Marquis Caldeira, Jr., S.C.No. 6994, State of Hawaii *v.* Raymond Douglas Fulp, and S.C.No. 7014, State of Hawaii *v.* Charles K. Pokipala, have been consolidated for the purposes of appeal.

This appeal concerns the application of Act 181, S.L.H. 1976 [now HRS § 706-606.5], to these defendants. The statute provides:

> Notwithstanding section 706-669 and any other law to the contrary, any person convicted under sections 707-701 relating to murder, 707-710 relating to assault in the first degree, 707-720 relating to kidnapping, 707-730 relating to rape in the first degree, 707-733 relating to sodomy in the first degree, *708-810 relating to burglary in the first degree,* 708-840 relating to robbery in the first degree, 712-1241 relating to the promoting of a dangerous drug in the first degree, *712-1242 relating to the promoting of a dangerous drug in the second degree,* or 712-1244 relating to the promoting of a harmful drug in the first degree, who has a prior conviction for the same offense in this or another jurisdiction, shall be sentenced for each conviction after the first conviction to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:
>
> (1) Second conviction for the same offense — 5 years;
>
> (2) Third conviction for same offense — 10 years. The sentencing court may impose the above sentences consecutive to any other sentence then or previously imposed on the defendant.'' (Emphasis added)

*State of Hawaii v. Joseph Freitas, Jr. and Kenneth L. Karren,* S.C. Nos. 6896 and 7005, decided this day, controls the issues in this appeal. Defendant Caldeira was convicted of burglary in the first degree under HRS § 708-810(1) (c), as well as of the offense of driving without a license. Because of a prior conviction for burglary in the first degree, he was sentenced under Act 181 to a mandatory minimum term of five years imprisonment without possibility of parole. Defendants Pokipala and Fulp were convicted of promoting a dangerous

drug in the second degree under HRS § 712-1242, and because of prior convictions for similar offenses, they were each sentenced under Act 181 to a mandatory minimum term of five years. We affirm as to defendant Fulp, and reverse and remand for resentencing as to defendants Caldeira and Pokipala. Defendant Caldeira's conviction for driving without a license is not an issue on appeal.

## I.

We find no merit in the contention of defendants Pokipala and Fulp to the effect that inasmuch as the promotion of drugs is a nonviolent crime, the penalty to which they have been subjected in this case was grossly disproportionate to the conduct proscribed. *See People v. Broadie, supra; Stewart v. United States,* 325 F.2d 745 (8th Cir. 1964), *cert. denied* 377 U.S. 937; *Gallego v. United States,* 276 F.2d 914 (9th Cir. 1960) (minimum sentence of five years for first offender upheld); *Halprin v. United States,* 295 F.2d 458 (1961); *State v. Espinosa,* 101 Ariz. 474, 421 P.2d 322 (1966); *compare, In re Foss,* 112 Cal.Rptr. 649, 519 P.2d 1073 (1974).

Dangerous drugs as defined by the statute, HRS § 712-1240(1), include morphine and heroin, as well as opium and cocaine, and the concern of the legislature over their promotion and distribution is best expressed in the commentary on HRS §§ 712-1241 and 1242:

"These drugs are the most fearsome in their potential for destruction of physical and mental well being. The drugs of this category are characterized by a high tolerance level which requires the user to use greater and greater amounts each time to achieve the same "high". More importantly, all of the drugs, with the exception of cocaine to some extent, are highly addictive; that is, if use of the drug is discontinued, severe withdrawal symptoms occur which can be relieved only by more of the drug. The combination of a high tolerance level and addictive liability creates a physical dependence in the user which may

lead, and in many cases has led, him to commit crimes to obtain money needed to buy more narcotics.''

HRS §§ 712-1241[1] and 1242[2] were obviously designed to hit hardest at the illegal trafficker in dangerous drugs. *Id*. The statutory scheme presumes that the greater the amount possessed the more likely is the possessor to be involved in the illicit sale and distribution of drugs. *Id*. Such legislative presumptions have been found to be reasonable. *People v. Broadie*, 37 N.Y.2d 100, 332 N.E.2d 338 (1975).

---

[1] 712-1241. (1) A person commits the offense of promoting a dangerous drug in the first degree if he knowingly:

(a) Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of:

(i) One ounce or more, containing any of respective alkaloids or salts of heroin, morphine, or cocaine; or

(ii) Two ounces or more, containing one or more of any of the other dangerous drugs; or

(b) Distributes:

(i) Fifty or more capsules, tablets, ampules, or syrettes containing one or more dangerous drugs; or

(ii) One or more preparations, compounds, mixtures, or substances of an aggregate weight of

(A) One-eighth ounce or more, containing any of the respective alkaloids or salts of heroin, morphine, or cocaine; or

(B) One-half ounce or more, containing any other dangerous drug; or

(c) Distributes any dangerous drug in any amount to a minor who is at least three years his junior.

(2) Promoting a dangerous drug in the first degree is a class A felony.

[2] 712-1242. (1) A person commits the offense of promoting a dangerous drug in the second degree if he knowingly:

(a) Possesses fifty *or more* capsules, tablets, ampules, or syrettes, containing one or more dangerous drugs; or

(b) Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of:

(i) One-eighth ounce *or more*, containing any of the respective alkaloids or salts of heroin, morphine, or cocaine; or

(ii) One-half ounce *or more*, containing any dangerous drug in any amount.

(c) Distributes any dangerous drug in any amount.

(2) Promoting a dangerous drug in the second degree is a class B felony. (Emphasis added)

The seriousness of the problem is graphically explained by the *Broadie* court:

"In assessing the gravity of a criminal offense, the primary consideration is the harm it causes to society. The Legislature, in making this assessment, could properly view criminal narcotics sales not as a series of isolated transactions, but as symptoms of the widespread and pernicious phenomenon of drug distribution. Social harm in drug distribution is great indeed. The drug seller, at every level of distribution, is at the root of the pervasive cycle of destructive drug abuse. . . .

"Defendants would minimize drug trafficking by arguing that it is not a crime of violence. Because of their illegal occupation, however, drug traffickers do often commit crimes of violence against law enforcement officers and because of the high stakes, engage in crimes of violence among themselves. . . .

"More significant, of course, are the crimes which drug traffickers engender in others. The seller often introduces the future addict to narcotics. The addict, to meet the seller's price, often turns to crime to 'feed' his habit. . . .

"Thus the Legislature could reasonably have found that drug trafficking is a generator of collateral crime, even violent crime. And violent crime is not, of course, the only destroyer of men and the social fabric. Drug addiction degrades and impoverishes those whom it enslaves. This debilitation of men, as well as the disruption of their families, the Legislature could also lay at the door of the drug traffickers. . . ." 332 N.E.2d at 342.

II.

On the question of notice, a defendant must be advised within a reasonable time of the intended application of Act 181. *State v. Freitas and Karren, supra.* In the case of defendant Fulp, notice of the state's intention to proceed under Act 181 was given on April 18, 1978. He was sentenced six days

later, on April 24, 1978. Defendant Caldeira was informed by the trial court at the time it accepted his guilty plea to the underlying offense, on February 17, 1978, that Act 181 could apply to him. The matter of sentencing was thereafter continued to April 12, 1978. Defendant Pokipala was notified of the intended application of Act 181 on the afternoon of January 18, 1978. He was sentenced on the morning of January 20, 1978. Each defendant was represented by counsel at the Act 181 proceedings. None requested a continuance. In the absence of a request for a continuance and no prejudice to the defendants having been shown, we find the notice requirements under the circumstances to have been satisfied. Moreover, defendant Fulp's failure to object to any lack of proper notice would also have constituted a waiver of that issue. *See Oyler v. Bolles*, 368 U.S. 448 (1962); *State v. Freitas and Karren, supra.*

### III.

We are constrained, however, to set aside the sentence imposed upon defendants Caldeira and Pokipala. There is nothing in the record to indicate that either was represented by counsel at the time of his prior conviction. *See State v. Freitas and Karren, supra.* And in *State v. Afong, et al.*, S.C. Nos. 6600, 6644, and 6653, decided this day, we held that unless conceded by the defendant, the government is required to show, in Act 181 proceedings, that he was represented by counsel, or had waived such representation, at the time of his prior conviction. *See also State v. Freitas and Karren, supra.* While evidence was adduced to prove the fact of these defendants' prior convictions, there was no evidence offered to show that they were represented by counsel in the earlier proceedings or that they had waived such representation. *Burgett v. Texas*, 389 U.S. 109 (1967).

Affirmed as to defendant Fulp. Reversed and remanded for resentencing as to defendants Caldeira and Pokipala in accordance with the procedures we have established for Act 181 proceedings.

*Michael K. Tateishi*, Deputy Public Defender for defendants-appellants.

*Duffy Mendonca*, Deputy Prosecuting Attorney for plaintiff-appellee.