STATE OF HAWAII, Plaintiff-Appellee, *v.* CHARLES
FRANKLIN MELEAR, Defendant-Appellant

NO. 7705

CRIMINAL NO. 53177

JUNE 30, 1981

RICHARDSON, C.J., OGATA, MENOR,
LUM AND NAKAMURA, JJ.

## OPINION OF THE COURT BY OGATA, J.

Defendant-appellant, Charles Franklin Melear (hereinafter appellant), appeals both his conviction by jury of burglary in the first degree,[1] and the subsequent imposition of a twenty-year sentence under the extended term statute with the additional requirement of his serving a five-year minimum term. We affirm.

### I.

On April 22, 1979, at about 1:45 p.m., Barbara Makus, a Canadian tourist, returned to her room at the Edgewater Hotel in Waikiki and found appellant going through her belongings and that of her roommate, Janice Barnes. Upon being discovered, appellant attempted to leave the room with a suitcase and a brown paper bag.

---

[1] Burglary in the First Degree is a violation of HRS § 708-810(1)(c) which reads:
(1) A person commits the offense of burglary in the first degree if he intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:
(c) He recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.

Ms. Makus was able to pull the suitcase away, but appellant fled via the fire escape still clutching the brown paper bag.

Bystanders on the street below heard Ms. Makus scream that she had been robbed by appellant. They gave chase to appellant, whom they had seen walking down the fire escape. This chase led to the Royal Hawaiian Hotel, but appellant was able to elude his pursuers.

Meanwhile, the police responded to a reported burglary at the Edgewater Hotel. After arriving at the hotel, the police broadcasted over the radio a description of the suspect: a local male with short black hair, mustache, no shirt, blue shorts, tattoos on the body, carrying a white T-shirt, and seen running towards Lewers Street. Officers Michael Church and Andrew Okada heard the description of the suspect and observed a man generally matching the description walking near the Hyatt Regency Hotel carrying a white pizza box in an upright position. Officer Okada asked the man, identified as appellant, to stop and show some identification, whereupon Okada stated the reason for the stop. Appellant placed the pizza box on the ground and then ran from the police. After a brief chase, the officers caught appellant and after a struggle, arrested him.[2]

Appellant was subsequently indicted by the Oahu Grand Jury on August 8, 1979, for burglary in the first degree. At trial, after a jury was impaneled, appellant's counsel made several oral motions which were denied by the trial court.[3] Appellant was convicted of the offense charged and sentenced under the extended term and repeat offender provisions of our statutes. He now appeals raising the following issues:

(1) Whether the trial court erred in denying appellant's mo-

---

[2] Officers recovered the following items at the scene from appellant's person and the pizza box which opened when appellant fled: a white pizza box, a brown paper bag, a .38 caliber pellet gun, 3 gold chains, a gold bracelet, Canadian coins and currency, American coins and currency, American Express Traveler's Checks of victims Barnes and Makus, an Alberta identification card of Janice Barnes, and a few other miscellaneous items.

[3] On the day of trial, appellant moved to dismiss the indictment for lack of grand jury counsel, for violation of the equal protection and due process clauses; moved for a continuance; and moved to suppress the jewelry and the evidence seized from appellant at the time of arrest. We expect compliance with Rule 12(c), H.R.P.P., which provides that all pretrial motions must be made 21 days after arraignment. The record reflects the motions were not made within the allotted time period. Thus, the motions should have been considered untimely.

tion to dismiss the indictment due to the absence of grand jury counsel;

(2) Whether the trial court erred in admitting the pellet gun into evidence;

(3) Whether the trial court erred in failing to declare a mistrial or in failing to dismiss the charges against appellant due to the prosecutor's improper remarks during closing argument; and

(4) Whether the trial court erred in granting the State's motion for an extended term sentence.

## II.

Appellant asserts that the trial court erred in not dismissing the indictment because grand jury counsel had not been appointed as required by Article I, Section 11 of the Hawaii State Constitution.[4] We recently examined this issue in *State v. Rodrigues,* 63 Haw. 412, 629 P.2d 1111 (1981), and find *Rodrigues* to be controlling.

In *Rodrigues, supra,* we held that Article I, Section 11 of our State Constitution was not a self-executing provision. The amendment was established to ensure an independent grand jury. We also found that the independent grand jury counsel was created with the intent of relieving the prosecutor of the burden of advising the grand jury on matters of law. In addition, the grand jury counsel would not serve as an advocate on behalf of the accused. Thus, the trial court was correct in not dismissing the indictment for failure to appoint grand jury counsel.

Appellant also argues that different treatment of persons before the grand jury violated his due process and equal protection rights.

---

[4] Article I, Section 11 of the Hawaii State Constitution reads:

Whenever a grand jury is impaneled, there shall be an independent counsel appointed as provided by law to advise the members of the grand jury regarding matters brought before it. Independent counsel shall be selected from among those persons licensed to practice law by the supreme court of the State and shall not be a public employee. The term and compensation for independent counsel shall be as provided by law.

This amendment was adopted by the 1978 Constitutional Convention and was subsequently ratified by the voters.

Appellant maintains that the procedures used in returning the indictment against appellant differed from those used in another case where no indictment was returned.

On many occasions, we have examined due process violations in grand jury proceedings. In *State v. Joao*, 53 Haw. 226, 491 P.2d 1089 (1971), we established that under the due process clause, a defendant is entitled to a fair and unbiased grand jury. Thus, due process is violated when the prosecutor engages in conduct that invades the province of the grand jury or induces action other than that which the jurors in their uninfluenced judgment deem warranted on the evidence fairly presented to them. Then in *State v. Layton*, 53 Haw. 513, 497 P.2d 559 (1972), and in *State v. Murphy*, 59 Haw. 1, 575 P.2d 448 (1978), we held that the excessive use of hearsay in the grand jury violated defendant's due process right. Next, in *State v. Bell*, 60 Haw. 241, 589 P.2d 517 (1978), we held that due process is not violated by the prosecutor's failure to present exculpatory evidence to the grand jury. Finally, in *State v. O'Daniel*, 62 Haw. 518, 616 P.2d 1383 (1980), we held that the failure of prosecutor to instruct the grand jurors of a lesser included offense did not violate due process.

The mere fact that appellant was indicted while another person was not is insufficient to find a constitutional violation. Appellant has the burden of proving prejudicial prosecutorial misconduct before the grand jury. *State v. Rodrigues, supra; State v. Scotland*, 58 Haw. 474, 572 P.2d 497 (1977). Our review of the record reveals that there is no evidence to support this allegation. Accordingly, the trial court's action in not dismissing the instant indictment was proper.

III.

Appellant argues that the initial stop by Officers Church and Okada constituted an illegal arrest and that any evidence seized therein was tainted and should have been suppressed as the fruit of the illegal arrest.[5] In addition, appellant contends that the introduc-

---

[5] Appellant also contends that the show-up conducted after apprehension was unduly suggestive. However, no motion to suppress identification was made in the trial court nor was appellant's identification objected to during the trial. We consider this point of error waived. Rule 12(f), H.R.P.P. *See also* State v. Bennett, 62 Haw. 59, 610 P.2d 502 (1980) (where one-to-one show up not unduly suggestive in the totality of circumstances).

tion of the pellet gun into evidence was more prejudicial than probative.

It is well established that a law enforcement officer may "in appropriate circumstances and in appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio,* 392 U.S. 1, 22 (1968); *State v. Barnes,* 58 Haw. 333, 337, 568 P.2d 1207, 1211 (1977). We stated in *State v. Barnes, supra,* at 338, 568 P.2d at 1211:

> To justify an investigative stop, short of an arrest based on probable cause, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." The ultimate test in these situations must be whether from these facts, measured by an objective standard, a man of reasonable caution would be warranted in believing that criminal activity was afoot and that the action taken was appropriate. (Citations omitted.)

By these standards, we are firmly convinced that in this case, the stop of appellant was proper. As the United States Supreme Court noted in *Adams v. Williams,* 407 U.S. 143, 146 (1972):

> A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at that time. (Citations omitted.)

Officers Okada and Church heard over the police radio a description of the male burglary suspect heading toward them. Thus, upon observing a man matching the broadcast description, it would have been poor police practice in not making a brief investigative stop to determine whether a crime was committed and if it was committed by the suspect. *State v. Madamba,* 62 Haw. 453, 456, 617 P.2d 76, 78 (1980); *State v. Kea,* 61 Haw. 566, 569, 606 P.2d 1329, 1331 (1980); *State v. Barnes, supra.* We do not require precise correlation between a police radio description and the actual appearance of a suspect. *In Matter of J.G.J.,* 388 A.2d 472 (D.C. App. 1978). In this instance, the similarities between the radio description of the suspect and the appearance of appellant, heading in the same direction being travelled by the suspect shortly after the commission of the crime justified the investigatory stop by the police.

Even though the initial stop of appellant was proper, we must examine whether the subsequent search and seizure was proper. A search incident to an investigatory stop is strictly limited to a pat down of outer clothing for the discovery of weapons if the officer reasonably believes the person stopped is armed and presently dangerous. *Terry v. Ohio, supra; Adams v. Williams, supra; State v. Joao,* 56 Haw. 216, 533 P.2d 270 (1975); *State v. Onishi,* 53 Haw. 593, 499 P.2d 657 (1972). In order to justify a more extensive intrusion on an individual, there must be a warrant based on probable cause. *State v. Dias,* 52 Haw. 100, 470 P.2d 510 (1970); *State v. Texeira,* 50 Haw. 138, 433 P.2d 593 (1967).

A warrantless search of an individual incident to a valid arrest properly may be directed towards a protective search for weapons, or towards the discovery of fruits of the crime for which the accused has been arrested, as well as the instrumentalities used in its commission, or to prevent the arrestee from escaping. *State v. Barnes, supra; State v. Hanawahine,* 50 Haw. 461, 464, 443 P.2d 149, 151-52 (1969); *State v. Park,* 50 Haw. 275, 439 P.2d 212 (1968). The search must be no broader than is absolutely necessary to accomplish the purposes for which such searches are permitted. *State v. Kaluna,* 55 Haw. 361, 520 P.2d 51 (1974). Thus, the search may be conducted of his person or of the area within his immediate reach and control. *Chimel v. California,* 395 U.S. 752 (1969); *State v. Dias, supra.*

A brief investigatory stop in which police inquiry is made of the detainee may develop into probable cause to arrest and search. *Keiningham v. United States,* 307 F.2d 632 (D.C. Cir. 1962). In addition, although not dispositive, flight from the police is a factor which may support a finding of probable cause. *Sibron v. New York,* 392 U.S. 40, 66-67 (1968); *United States v. Minor,* 382 F. Supp. 203, n.1 (D. Hawaii 1974); *Franklin v. United States,* 382 A.2d 20 (D.C. App. 1978).

We conclude that probable cause to arrest was developed during the brief investigatory stop. During the police inquiry, appellant ran from the police and during this flurry, the pizza box opened and exposed a brown paper bag and the butt of a pellet gun. Thus, appellant's attempted flight from the police, his similarity to the broadcast description of the suspect shortly after the crime, and the similarity between the direction the appellant was travelling and the direction the suspect was reportedly travelling establish probable

cause. Therefore, we hold that the arrest of appellant was valid and that the seizure of evidence incident to that lawful arrest was proper.

Because the initial stop and subsequent arrest of appellant were lawful, there is no taint or illegality to the evidence subsequently seized incident to the arrest. *Wong Sun v. United States,* 371 U.S. 471 (1963); *State v. Bennett, supra; State v. Boynton,* 58 Haw. 530, 574 P.2d 1330 (1978). We hold that the evidence seized was not the fruit of an illegal arrest.

Now we consider whether the admission of the pellet gun into evidence was more prejudicial than probative. Appellant maintains that the introduction of the pellet gun would be highly prejudicial because it would prompt the jury to infer the commission of a crime, even though there is no evidence linking a pellet gun to the burglary.

In *State v. Iaukea,* 56 Haw. 343, 349, 537 P.2d 724, 729 (1975), we stated that: "[t]he responsibility for maintaining the delicate balance between probative value and prejudicial effect lies largely within the discretion of the trial court."[6] A ruling on the admissibility of evidence will not be reversed absent an abuse of discretion. *State v. O'Daniel, supra.* The factors which the trial court can consider in assessing the balance between prejudicial effect and probative value is "actual need for the evidence, availability of other evidence on the same issues, probative weight of the evidence, and the potential for creating prejudice and hostility against the accused in the minds of the jurors." Commentary to Rule 403, Haw. R. Evid. (HRS ch. 626, Sp. Pam., 1981).

The pellet gun rebuts appellant's argument that he had a social meeting with victim Janice Barnes, and is therefore relevant. In addition, appellant made no showing on the prejudice he has suffered by this ruling. *State v. Pulawa,* 62 Haw. 209, 219, 614 P.2d 373, 379 (1980). Under the circumstances of the instant case, we hold that the trial court did not abuse its discretion in admitting the pellet gun into evidence.

---

[6] The balancing test of *Iaukea* has been codified in Rule 403, Haw. R. Evid. (HRS ch. 626, Sp. Pam.; 1981).

## IV.

Appellant's next contention is that the trial court erred in not granting a mistrial or dismissing the charge against him due to the prosecutor's prejudicial comments during closing argument. Appellant asserts that the prosecutor improperly commented on his failure to testify.

The Fifth Amendment of the United States Constitution prohibits either adverse comment by the prosecutor on the accused's silence or instructions by the court that such silence is evidence of guilt. *Lakeside v. Oregon*, 435 U.S. 333 (1978); *Griffin v. California*, 380 U.S. 609 (1965); *Kaneshiro v. Belisario*, 51 Haw. 649, 466 P.2d 452 (1970). However, commenting on a defendant's silence, which is highly disfavored, will not automatically require reversal. *State v. Padilla*, 57 Haw. 150, 552 P.2d 357 (1976); *State v. Phillips*, 99 Wis.2d 46, 298 N.W.2d 239 (1980).

In *State v. Padilla, supra,* we were confronted with the allegation that a prosecutor commented on a defendant's failure to testify. We held that reversal is required only when the language used in the statement was "manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Id.* at 158, 552 P.2d at 362.

In *State v. Phillips, supra,* the Wisconsin court used the same standard enunciated in *Padilla*. The court further stated that "where the statement when viewed within the context of the entire record, and its probable effect on the jury is harmless beyond a reasonable doubt we will not reverse." 99 Wis.2d at 52, 298 N.W.2d at 242.

After a review of the entire record, we hold that the prosecutor's improper comments were not grounds for reversal. The following· discussion occurred in a bench conference after closing arguments had been completed:[7]

---

[7] Although we do not have a record of the exact statements made, the State admits that appellant's representations accurately reflect the prosecutor's comments. *See* HRS § 606-12. In addition, appellant's counsel did not object to the improper statements of the prosecutor until all arguments had been completed. It is better practice for counsel to immediately object to improper comments made, especially when arguments are not recorded. In Commonwealth v. Adkins, 468 Pa. 465, 472, 364 A.2d 287, 291 (1976), the court stated:

Where the argument is not recorded, there is a need to require an objection during argument so that the remarks may be placed in the record at or about the

> MR. WILSON: Your Honor, I move for an immediate mistrial on this case. Think the prosecution has gone too far in discussing Mr. Melear's Constitutional right not to take the witness stand, especially a statement that just — that maybe he just doesn't want to talk about it. The statement that it does not imply the opposite and that therefore, that is what we were trying to imply. I think what it has done is to infringe upon Mr. Melear's Constitutional right to a jury trial. I would ask for a mis-trial right now.

From the above representation, we believe that the prosecutor's statement was not manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.

In addition, even though the prosecutor's comments may have been improper, any harm or prejudice to appellant can be cured by the court's instructions to the jury. It will be presumed that the jury adhered to the court's instructions. *State v. Amorin,* 58 Haw. 623, 629, 574 P.2d 895, 899 (1978); *State v. Kahalewai,* 55 Haw. 127, 516 P.2d 336 (1973). In this case, the trial court instructed the jury to disregard the arguments of the prosecutor regarding the constitutional right of the accused. We believe this action along with the immediate reading of the entire charge to the jury removed any harm or prejudice to appellant caused by the prosecutor's statements.

## V.

Appellant's final contentions relate to his sentence. After being adjudged guilty of burglary in the first degree, a class B felony, appellant was sentenced to twenty years in prison as being a persistent offender under the extended term statute, HRS §§ 706-661,

---

time they are made and thereby ensure accuracy. Otherwise, the recollection of both counsel and the court at the conclusion of the argument may differ and thereby result in unnecessary factual disputes.

Moreover, an immediate objection would also allow the trial court to correct any prejudice by a jury instruction. Steffen v. State, 267 Ark. 402, 590 S.W.2d 302 (1979); State v. Woodward, 587 S.W.2d 287 (Mo.Ct.App. 1979).

662.[8] The court also imposed a five-year mandatory minimum period of imprisonment pursuant to HRS § 706-605.5.[9]

First, appellant argues that notice on the motion was inadequate because service was made by leaving the motion in defense counsel's court jacket rather than through personal service or service by mail.

It is well settled that a defendant being sentenced under the extended term statute is entitled to the full panoply of constitutional

---

[8] HRS §§ 706-661 and 706-662 read in part:

§ 706-661 *Sentence of imprisonment for felony; extended terms.* In the cases designated in section 706-662, a person who has been convicted of a felony may be sentenced to an extended indeterminate term of imprisonment. When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:

(1) For a class A felony — life;
(2) For a class B felony — twenty years; and
(3) For a class C felony — ten years.

The minimum length of imprisonment shall be determined by the board of paroles and pardons in accordance with section 706-669.

§ 706-662 *Criteria for sentence of extended term of imprisonment for felony.* The court may sentence a person who has been convicted of a felony to an extended term of imprisonment if it finds one or more of the grounds specified in this section. The finding of the court shall be incorporated in the record.

(1) Persistent offender. The defendant is a persistent offender whose commitment for an extended term is necessary for protection of the public. The court shall not make such a finding unless the defendant is twenty-two years of age or older and has previously been convicted of two felonies committed at different times when he was eighteen years of age or older.

[9] HRS § 706-606.5(1) reads:

§ 706-606.5 *Sentencing of repeat offenders.* (1) notwithstanding section 706-669 and any other law to the contrary, any person convicted under section 707-701 relating to murder, 707-710 relating to assault in the first degree, 707-720 relating to kidnapping, 707-724 relating to criminal coercion involving dangerous weapons, 707-730 relating to rape in the first degree, 707-733 relating to sodomy in the first degree, 707-768 relating to extortion involving dangerous weapons, 708-810 relating to burglary in the first degree, 708-840 relating to robbery in the first degree, 712-1241 relating to the promoting of a dangerous drug in the first degree, 712-1242 relating to the promoting of a dangerous drug in the second degree, or 712-1244 relating to the promoting of a harmful drug in the first degree, who has a prior conviction for any of the above enumerated offenses or of any one of those enumerated in subsection (2) in this or another jurisdiction, within the time of the maximum sentence of the prior conviction, shall be sentenced for each conviction after the first conviction to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:

(a) Second conviction — 5 years;
(b) Third conviction — 10 years.

protections guaranteed in criminal proceedings. Included in these protections are the right to notice and hearing, assistance of counsel, compulsory process and cross-examination of such witnesses appearing at a hearing. *State v. Huelsman,* 60 Haw. 71, 588 P.2d 394 (1978), *rehearing denied,* 60 Haw. 308 (1979). *State v. Kamae,* 56 Haw. 628, 548 P.2d 632 (1976). In addition, HRS § 706-664 requires notice to the defendant as a prerequisite to the imposition of the extended term sentence.

We have held that a defendant is entitled to reasonable notice under the repeat offender statute. *State v. Freitas,* 61 Haw. 262, 602 P.2d 914 (1979); *State v. Caldeira,* 61 Haw. 285, 602 P.2d 930 (1979). In *Freitas* and *Caldeira,* defendants were advised in advance of the State's intent to seek repeat offender sentences. Having found no request for continuances or complaints that there was insufficient time to prepare for such a hearing, we held that the notice requirement was satisfied.

Similarly, a defendant in an extended term sentencing is also entitled to reasonable notice. *Cf. State v. Freitas, supra.* The purpose of notice is to insure that interested parties are apprised of the pendency of any proceeding which is to be accorded finality. *Freitas v. Gomes,* 52 Haw. 145, 472 P.2d 494 (1970). Given notice, parties are able to determine how to respond and prepare for the issues involved in the hearing. *Oyler v. Boles,* 368 U.S. 448 (1962). In the instant case, although leaving the motion for extended term and repeat offender sentences in counsel's jacket is improper, such a defect does not fatally defeat the sentence imposed. Appellant admits receiving a copy of the State's motion on or about October 11, 1979, about a month and a half before the sentencing hearings which were held on November 29, 1979, and December 6, 1979. The record does not reflect any complaint from the appellant that there was inadequate time to prepare for the hearing nor was a continuance requested. Thus, the notice requirement in this instance was satisfied.

Second, appellant contends that the imposition of the extended term sentence was not supported by the evidence and constituted cruel and unusual punishment. This argument asserts that the prosecution proved only the first prong of the test established in *State v. Huelsman, supra.* In *Huelsman,* we adopted a two-step process for the imposition of the extended term sentence. The first step requires

the trial court to find that the defendant is within the class of offenders to which the particular subsection applies. Then the court must determine that the defendant's commitment for an extended term is necessary for the protection of the public. 60 Haw. at 76-77, 588 P.2d at 398.

From the record, we conclude that there was sufficient evidence for the trial court to impose the extended term sentence. Appellant had been convicted on separate occasions for burglary in the first degree and burglary in the second degree when he was older than eighteen years of age. The evidence also reflected·that appellant was thirty-five years old at the time of this sentencing. Thus, having sufficient evidence before it, and finding that appellant's imprisonment was necessary to protect the public, the trial court did not abuse its discretion in imposing the extended term sentence. *See, State v. Freitas, supra.*

We also find that the imposition of the extended term sentence did not constitute cruel and unusual punishment. In *State v. Iaukea, supra,* we established that the standard by which punishment is to be judged cruel and unusual is whether in light of developing concepts of decency and fairness, the prescribed punishment is so disproportionate to the conduct proscribed and is of such duration as to shock the conscience of reasonable persons or an outrage to the moral sense of the community. The nature of the offense and the danger the offender poses to society are key factors in determining whether the prescribed penalty is cruel and unusual. *State v. Freitas, supra,* at 268, 602 P.2d at 920.

Recently, the United States Supreme Court in *Rummel v. Estelle,* 445 U.S. 263 (1980), held that the imposition of a mandatory life sentence following defendant's third felony conviction did not constitute cruel and unusual punishment. The court found that the life sentence imposed was not so disproportionate to the conviction of three felonies: obtaining $80 of goods and services in the fraudulent use of a credit card, passing a forged check of $28.36 and obtaining $120.75 by false pretenses.

Viewing appellant's record in light of developing concepts of decency and fairness, we find that the imposition of the twenty-year extended term sentence was not so disproportionate to his crimes as to be shocking to the conscience or an outrage to the moral sense of

the community.[10] Thus, we hold that the sentence imposed upon appellant did not constitute cruel and unusual punishment.

Affirmed.

*Jerry I. Wilson (Wilson & Berman* of counsel) for defendant-appellant.

*Glenn M. Miyajima (Archibald C. K. Kaolulo* on the briefs), Deputy Prosecuting Attorneys, for plaintiff-appellee.

---

[10] Even though this burglary was committed in a non-violent manner, "[t]he law has always been jealously solicitous of a person's place of habitation, and the sanctity of one's home is still one of the most cherished and strictly protected rights of a citizen." State v. Freitas, *supra,* at 270, 602 P.2d at 921.