STATE OF HAWAII, Plaintiff-Appellant, Cross-Appellee, *v.* MITCHELL HARUO KIDO, Defendant-Appellee, Cross-Appellant

(CRIMINAL NO. 54957)

AND

MITCHEL HARUO KIDO, Petitioner-Appellee, Cross-Appellant, *v.* STATE OF HAWAII, Respondent-Appellant, Cross-Appellee

(S. P. NO. 5519)

NO. 8410

DECEMBER 1, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

The State appeals the trial court's decision setting aside its sentence of defendant Mitchell Haruo Kido (Kido) to an indeterminate term of imprisonment of twenty years and instead placing him on probation for five years.

Kido cross-appeals the trial court's decision that Hawaii Revised Statutes (HRS) § 706-659 (1976, as amended) is not unconstitutional per se.

We hold that the trial court erred in setting aside its sentence of Kido and that Kido's cross-appeal is untimely.

On November 18, 1980, Kido was indicted for the following offenses:

Counts I and II: Violating HRS § 712-1245(1)(c), Promoting a Harmful Drug in the Second Degree, on May 5, 1980 and May 20, 1980, by distributing "the harmful drug diazepam (quaalude)."[1]

Count III: Violating HRS § 712-1244(1)(c), Promoting a Harmful Drug in the First Degree, on June 22, 1980, by distributing 50 or more capsules or tablets containing "the harmful drug diazepam (quaalude)."[2]

Counts I and II charge class B felonies. HRS § 712-1245(2) (1976). Since it involves the distribution of 50 or more capsules or tablets, Count III charges a class A felony. HRS § 712-1244(2) (1976).

After a bench trial on January 19, 1981, Kido was found guilty of all three counts and referred for presentencing investigation. Sentencing was scheduled for March 27, 1981.

On March 23, 1981, Kido filed a motion to have the mandatory sentencing provision in HRS § 706-659 declared unconstitutional

---

[1] [2] "Valium" is a trade name for diazepam. *The Physician's Desk Reference* 1625 (36th ed. 1982). "Diazepam" is a Schedule IV controlled substance, HRS § 329-20(b)(7) (1976, as amended), which has a degree of danger or probable danger associated with a depressant effect on the central nervous system. HRS § 329-20(b). "Quaalude" is a trade name for methaqualone. The Physician's Desk Reference, *supra*, at 1074. "Methaqualone" is a Schedule II controlled substance, HRS § 329-16(d)(2) (1976, as amended), which has a high degree of danger or probable danger associated with a depressant effect on the central nervous system. HRS §§ 319-15, 329-16(d). Section 712-1240(1), HRS, describes "Schedule II" substances as dangerous drugs. Section 712-1240(2), HRS, describes "Schedule IV" substances as harmful drugs.

for violation of the prohibition against cruel and/or unusual punishment,[3] violation of an alleged due process right to the exercise of judicial discretion and to the separation of powers between the legislature and the judiciary, and violation of his right to equal protection.

At the hearing on the motion, Kido presented, without objection, various witnesses: his employer, his friend, his clinical psychologist, his older sister, his mother, the probation officer who conducted the presentence investigation, and a state senator who voted against House Bill No. 1918-80, which became Act 294 (1980) and was codified as HRS § 706-659.[4]

On April 30, 1981, the trial judge filed a Decision and Order which held that HRS § 706-659 did not per se impose cruel and/or unusual punishment, did not violate Kido's right to equal protection, but would constitute cruel and/or unusual punishment as applied to Kido. However, he concluded:

> Counsel is premature with his request. *Hart, supra,* and *Gallego, supra,* involved habeas corpus proceedings. That is, the inmates were seeking relief from custody. Such is not the case here. Under Rule 40, Hawaii Rule of Penal Procedure:
>
>> At any time but not prior to final judgment, a person may seek relief under the procedure set forth in this rule from the judgment of conviction, on the following grounds:
>>
>>> (i) that the judgment was obtained or sentence im-

---

[3] The "cruel or unusual punishment" prohibition of article I, § 12 of the Hawaii Constitution is disjunctive in form whereas the "cruel and unusual punishment" provision of the eighth amendment to the United States Constitution is conjunctive. The difference, however, appears to be only one of form and not of substance. When the Hawaii provision was originally adopted, the delegates to the 1950 constitutional convention used the eighth amendment to the United States Constitution as a model and intended federal precedent to be followed in construing the state's "cruel or unusual punishment" clause. Committee of the Whole Report No. 20, *reprinted in* 1 Proceedings of the Constitutional Convention of Hawaii of 1950 303 and 164 (1960); *see also, Hawaii Constitutional Convention Studies,* Introduction & Article Summaries 25, Legislative Reference Bureau (April 1978).

[4] The senator testified, *inter alia,* that House Bill No. 1918-80 was aimed at violent crime and professional drug distribution, not "social drug exchange," and that the legislators assumed that the "casual exchange" of drugs would be handled not as a class A felony, but as a class B or C felony. In other words, the legislature replaced express judicial discretion with implied prosecutorial discretion.

posed in violation of the Constitution of the United States or of the State of Hawaii;

. . .

(iii) that the sentence is illegal; . . .

(v) any ground which is a basis for collateral attack on the judgment.

For the purpose of this rule, a judgment is final when the time for direct appeal under Rule 37 has expired without appeal being taken, or if direct appeal was taken, when the appellate process has terminated.

Moreover, Rule 32(c) (1), states, "A judgment of conviction in the circuit court shall set forth the plea, verdict or findings, and the adjudication and sentence" . . . "The filing of the judgment in the office of the clerk constitutes the entry of judgment." THE COURT HAS NOT ENTERED A JUDGMENT OF CONVIC-TION. Of immense concern to the Court in the application of the principle which both the defense and the State advance to the Court is the manner in which this Court carves out an exception to the Statute.

Under the record such as before this Court and if this were a proper *Rule 40* proceeding the Court would hold that the Statute constitutes "cruel and unusual punishment" as to the defendant even though it is facially valid. In so holding, the Court pronounces:

Whenever in a Rule 40 proceeding an offender [who] is convicted of a Class A felony and is sentenced pursuant to § 706-659, H.R.S., satisfies the Court of all of the following:

1. He has no history of criminal violations;

2. The underlying facts giving rise to the offense neither show that there was violence nor the threat of violence used in the perpetration of the offense;

3. That incarceration pursuant to the provisions of § 706-659, H.R.S., medically or psychologically indicate that there is substantial risk of danger to the offender's life or person;[5]

---

[5] The clinical psychologist testified: "There's a high risk of suicide to himself, and it would even increase if he were incarcerated."

4. That it is highly unlikely that the offender will commit another crime;

5. The offender engaged in the activity leading up to the offense on a casual basis;

6. The offender does not require treatment in a correctional institution;

7. The offender's criminal conduct neither caused nor threatened the particular harm in the degree which the statutory provision defining the offense contemplated.

Sec. 706-659, H.R.S., constitutes "cruel and unusual punishment" as to that offender.

Therefore, the Court directs counsel to allow this Court to pronounce sentence pursuant to H.R.S. 659 and immediately after sentence is pronounced request a stay of execution of the mittimus, which the Court, of course, will grant. If counsel wishes to appeal this decision, he may do so; otherwise, the Court directs counsel to file a petition pursuant to Rule 40(1)(c), HRPP, and the Court at a hearing on the petition will place defendant on probation on conditions to be stated at that hearing.

(Footnote added.)

On May 1, 1981, a judgment was filed which sentenced Kido, *inter alia,* to "be committed to the custody of the Director of the Department of Social Services and Housing to be confined at the Oahu Community Correctional Center[6] for a period of TEN YEARS concurrent" under Counts I and II and for a period of "TWENTY YEARS until released in accordance with the law" under Count III. (Footnote added.) The judgment stated, *inter alia,* "MITTIMUS stayed pending filing of Petition for Post Conviction Relief or Appeal."

On May 29, 1981, in a special proceeding, Kido filed a Petition

---

[6] §706-672 *Place of imprisonment.* (1) When a person is sentenced to imprisonment for an indeterminate term, the court shall commit him to the custody of the department of social services and housing for the term of his sentence and until released in accordance with law. The court shall determine the initial place of confinement and the director shall determine the proper program of redirection and any subsequent place of confinement best suited to meet the individual needs of the committed person.

\* \* \*

for Post-Conviction Relief from Judgment under Rule 40, Hawaii Rules of Penal Procedure (HRPP), "on the basis that the mandatory sentencing provision of HRS Section 706-659 requiring the Court to impose a twenty (20) year sentence on Petitioner is unconstitutional as applied to Petitioner in that it constitutes cruel and unusual punishment and violates Petitioner's equal protection of the laws' rights under both the Hawaii and United States Constitutions."

On June 5, 1981, the State filed a motion to dismiss the petition under "Rule 12(b)(1) and (6), Hawaii Rules of Civil Procedure," "on the grounds that this Court lacks jurisdiction over the subject matter of granting probation and that the petition fails to state a claim upon which relief can be granted."

At the motions hearing on August 20, 1981, the State attempted to call the Chairman of the Hawaii Paroling Authority as a witness. The offer of proof was that "he would tell the Court that in cases where no mandatory minimum is imposed on the defendant that his Authority can entertain parole hearings even prior to the normal six-months [sic] hearings in those cases where there are mitigating circumstances." The judge denied the request, stating:

As far as the evidence is concerned that evidence which the Court will consider in the Petition for Post-Conviction Relief is that evidence which the Court considered in rendering its decision on the Motion to Dismiss for unconstitutionality.

At the conclusion of the hearing, the trial court ruled:

Now, in accordance with the Decision and Order which the Court filed on April 30th, 1981, and for the reasons stated in that decision, the Court again reiterates that it finds Section 706-659, H.R.S., to be cruel and unusual punishment as to the particular offender which the Court has before it. And, therefore, the Court will grant the Petition, set aside the Judgment heretofore entered on May 1st, 1981.

* * * [I]t is the judgment and sentence of this Court that the defendant be placed on probation for a period of five years. In addition to the usual terms and conditions of probation, the Court will order the following special conditions:

The first special condition is that the defendant is ordered to perform 200 hours of community service under the direction and supervision of the Adult Probation Division.

The second special condition is that as the Adult Proba-

tion Division directs the defendant, the defendant is to seek and maintain mental health treatment and he is to maintain that mental health treatment until clinically discharged with the concurrence of the Adult Probation Division.

The third special condition is that throughout the period of probation, the defendant is to remain gainfully employed or enrolled in an educational or vocational training program.

A "Judgment" incorporating the trial court's decision was filed on September 15, 1981.

The State and Kido each filed a notice of appeal of the April 30, 1981 Decision and Order, the May 1, 1981 Judgment, and the September 15, 1981 Judgment.

The State contends that the trial judge erred in ruling that HRS § 706-659 is cruel and/or unusual as applied to Kido; in using Rule 40, HRPP, to review its own sentence; in staying the mittimus pending filing and determination of a Rule 40, HRPP, motion; and in refusing to permit the Chairman of the Hawaii Paroling Authority to testify.

Kido contends that the trial judge erred in not declaring HRS § 706-659 unconstitutional on its face.

We see problems unaddressed by either side.

1. In our view, if a judge concludes that a sentence will be cruel and unusual as applied, he should not apply the sentence. In this case, the trial judge imposed a sentence which he opined was unconstitutional.

2. An unconstitutional sentence is an illegal sentence and Rule 35, HRPP,[7] permits the court to correct an illegal sentence at any

---

[7] Rule 35.  CORRECTION OR REDUCTION OF SENTENCE.

The Court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce a sentence within 90 days after the sentence is imposed, or within 90 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 90 days after entry of any order or judgment of the Supreme Court of the United States denying review of, or having the effect of upholding a judgment of conviction. A motion to correct or reduce a sentence which is made within the time period aforementioned shall empower the court to act on such motion even though the time period has expired. The filing of a notice of appeal shall not deprive the court of jurisdiction to entertain a timely motion to reduce a sentence.

time. *State v. Fry*, 61 Haw. 226, 602 P.2d 13 (1979). In this case, however, Rule 35, HRPP, was not used.

3. Kido's entire attack in the lower court was aimed at HRS § 706-659, which mandates "an indeterminate term of imprisonment of twenty years" for class A felony convictions. He did not challenge the imposition of the concurrent ten-year sentences for the two class B felony convictions, even though such sentences were not mandated by law.

4. The trial judge's belief that a legislatively mandated maximum sentence will be unconstitutional as applied may not authorize him to impose whatever lesser sentence he deems appropriate. It may only authorize him to impose the maximum constitutionally permissible sentence. *See State v. Bloss*, 62 Haw. 147, 613 P.2d 354 (1980); *State v. Grahovac*, 52 Haw. 527, 480 P.2d 148 (1971).

5. After the sentence was imposed, Kido could have appealed within ten days after the entry of the Judgment on May 1, 1981. Rule 37(c), HRPP. He chose not to do so. Instead, on May 29, 1981, he filed his Rule 40, HRPP, motion. Kido did not file his notice of appeal until September 23, 1981. While we recognize some liberality in the time requirements of Rule 37(c), *State v. Allen*, 2 Haw. App. 606, 638 P.2d 338 (1981), we think that the limits have been exceeded in this case. Consequently, we hold that Kido's appeal of the April 30, 1981 Decision and Order and the May 1, 1981 Judgment is untimely. His appeal of the September 15, 1981 Judgment is timely, but the point specified in his opening brief was not urged in his motion under Rule 40, HRPP. Consequently, Kido has not properly preserved, and we will not consider, his contention that HRS § 706-659 is unconstitutional on its face.[8]

In an effort to place the current law in perspective, we will outline the history of the legislature's allocation of the power to sentence and to discharge from sentence before we address the dispositive issues.

Prior to 1957, the paroling authority was empowered to grant paroles and final discharges subject to the approval of the governor. Revised Laws of Hawaii (RLH) §§ 83-66 and 83-68 (1955). These two

---

[8] Moreover, in light of *State v. Freitas*, 61 Haw. 262, 602 P.2d 914 (1979); *Rummel v. Estelle*, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed.2d 382 (1980); *Hutto v. Finney*, 437 U.S. 678, 98 S. Ct. 2565, 57 L. Ed.2d 522 (1978), the contention appears to have no merit.

sections were amended in 1957 by Act 308 "to relieve the governor of his duties relating to paroles of prisoners." Senate Stand. Comm. Rep. No. 459, 29th Terr. Legislature, Reg. Sess. 1957; House Stand. Comm. Rep. No. 1059, 29th Terr. Legislature, Reg. Sess. 1957. They were recodified as HRS §§ 353-68 and 353-70, respectively, pursuant to Act 16 (1968).

In relevant part, HRS § 353-68 (1976, as amended) now provides:

§ 353-68. *Parole, how initiated and granted.* (a) Paroles may be granted by the Hawaii paroling authority at any time after the prisoner has served the minimum term of imprisonment fixed according to law[.] * * * The proceedings to obtain parole may be initiated by the written recommendation of the superintendent to the paroling authority or may be initiated by the paroling authority without any such recommendation.

In relevant part, HRS § 353-70 (1976) now provides:

§ 353-70 *Final discharge.* Whenever, in its opinion, any paroled prisoner has given such evidence as is deemed reliable and trustworthy that he will remain at liberty without violating the law and that his final release is not incompatible with the welfare of society, the Hawaii paroling authority may grant the prisoner a written discharge from further liability under his sentence.

* * *

Prior to 1965, the paroling authority recommended and the judiciary set the minimum sentence which the convicted defendant was required to serve before becoming eligible for parole and discharge. RLH § 258-52 (1955). In 1965, RLH § 258-52, was amended by Act 102 to take away from the judiciary and instead give to the paroling authority the sole authority to determine minimum terms of imprisonment. Section 258-52, as amended, was recodified in 1968 as HRS § 711-76, pursuant to Act 16 (1968). In 1972, HRS § 711-76 was repealed by Act 9 which enacted the Hawaii Penal Code.

As part of the Hawaii Penal Code, HRS § 706-669 now provides, *inter alia:*

§ 706-669 *Procedure for determining minimum term of imprisonment.* (1) When a person has been sentenced to an indeterminate or an extended term of imprisonment, the Hawaii paroling authority shall, as soon as practicable but no later than six

months after commitment to the custody of the director of the department of social services and housing hold a hearing, and on the basis of the hearing make an order fixing the minimum term of imprisonment to be served before the prisoner shall become eligible for parole.

As the commentary on HRS § 706-669 states, "This section continues the policy of the previous law of vesting in the Board of Paroles & Pardons the exclusive authority to determine the minimum time which must be served before the prisoner will be eligible for parole."

The legislature has also restricted the judiciary's authority with respect to the kinds of sentences which it may impose.

Section 706-660, HRS (1976) provided:

§706-660 *Sentence of imprisonment for felony; ordinary terms.* A person who has been convicted of a felony may be sentenced to an indeterminate term of imprisonment except as provided for in section 706-660.1 relating to the use of firearms in certain felony offenses. When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:

(1) For a class A felony — 20 years;
(2) For a class B felony — 10 years; and
(3) For a class C felony — 5 years.

The minimum length of imprisonment shall be determined by the Hawaii paroling authority in accordance with section 706-669.

Apparently referring to the amendments made by Act 102 (1965), the commentary to HRS § 706-660 (1976) states, *inter alia:*

In 1965, the Legislature enacted a law designed to end judicially imposed inconsistent sentences of imprisonment. This policy — known as true indeterminate sentencing — is continued. The court's discretion is limited to choosing between imprisonment and other modes of sentencing. Once the court has decided to sentence a felon to imprisonment, the actual time of release is determined by parole authorities. Having decided on imprisonment, the court must then impose the maximum term authorized. The concept is accepted in California and is being proposed in Michigan. This policy is also in substantial accord with the proposed A.B.A. Standards on sentencing.

Inevitably, there will remain some disparity arising from the fact that some judges will be more strongly inclined toward granting probation (or other non-imprisonment disposition) than others. The criteria set forth in Part II of this chapter, for withholding a sentence of imprisonment, are intended to alleviate this disparity somewhat. Moreover, § 706-669, governing the procedure for determining the actual minimum time to be served, provides that the parole board must make an initial determination as soon as practicable — but, in any event, no later than six months following commitment. Thus, "[g]rossly inappropriate denial[s] of probation can in most instances be cured fairly promptly through parole, if the circumstances favoring release are evident. . . ." [Footnotes omitted.]

As alternatives to imprisonment, HRS § 706-605 (1976) authorized the court to impose a fine, suspend the sentence, or place the defendant on probation. That section was amended in 1978 by Act 96 to also authorize the court to sentence a person to perform community services or to make restitution or reparation to the victim(s).

The alternatives to imprisonment, however, are no longer available for a class A felony conviction. Act 294 (1980) amended HRS § 706-660 and enacted § 706-659. Section 706-659, HRS (Supp. 1981), now provides:

[§ 706-659] *Sentence of imprisonment for class A felony.* * * * [A] person who has been convicted of a class A felony shall be sentenced to an indeterminate term of imprisonment of twenty years without possibility of suspension of sentence or probation. The minimum length of imprisonment shall be determined by the Hawaii paroling authority in accordance with section 706-669.

Section 706-660, HRS (Supp. 1981), now provides:

§ 706-660 *Sentence of imprisonment for class B and C felonies; ordinary terms.* A person who has been convicted of a class B or class C felony may be sentenced to an indeterminate term of imprisonment except as provided for in section 706-660.1 relating to the use of firearms in certain felony offenses. When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:

(1) For a class B felony — 10 years; and

(2) For a class C felony — 5 years.

The minimum length of imprisonment shall be determined by the Hawaii paroling authority in accordance with section 706-669.

The report by the House Judiciary Committee on H.B. No. 1918-80 which provided for the enactment of HRS § 706-659 explained:

The purpose of this bill is to provide for an automatic sentence of imprisonment of twenty years for any person convicted of a class A felony.

Present law does not provide an automatic sentence of imprisonment for persons convicted of a class A felony.

Your Committee feels that class A felonies such as rape, sodomy and robbery are among the most serious felonies that an individual can commit. Therefore, a mandatory imprisonment is warranted. Accordingly, your Committee recommends the adoption of the new section of Chapter 706, Hawaii Revised Statutes, which provides the protection needed for class A felons but recognizes certain felons will change and become productive members of society.

House Stand. Comm. Rep. No. 194-80, 10th Legislature, Reg. Sess. (1980).

Likewise, the report on H.B. No. 1918-80 by the Senate Judiciary Committee stated:

The purpose of this bill is to provide for an automatic sentence of imprisonment for any person convicted of a class A felony.

Present law provides for twenty years as a maximum sentence for class A felonies, but does not make imprisonment mandatory.

Your Committee feels that the seriousness of class A felonies which all involve violence, physical harm, or the threat thereof, merits mandatory imprisonment. This bill effects this purpose by denying suspension of sentence and probation as sentencing options in class A convictions, but retains, through indeterminate sentence, the option of parole by the parole authority in order that unusual extenuating circumstances can be given due consideration.

Senate Stand. Comm. Rep. No. 965, 10th Legislature, Reg. Sess. (1980).

Aside from Kido's contention that HRS § 706-659 is cruel and unusual on its face, neither party in this appeal challenges the legislature's taking most of the sentencing power away from the judiciary, retaining some for itself, and delegating the major share to the paroling authority. In light of cases such as *State v. Freitas*, 61 Haw. 262, 602 P.2d 914 (1979); *State v. Caldeira*, 61 Haw. 285, 602 P.2d 930 (1979); and *State v. Sacoco*, 45 Haw. 288, 367 P.2d 11 (1961), the lack of challenge is understandable.

Returning to the dispositive issues, the first is whether the lower court erred in deciding that its original sentence of Kido violated Kido's constitutional right to be free from cruel and/or unusual punishment.

Kido cites *In Re Lynch*, 105 Cal. Rptr. 217, 503 P.2d 921, the dissenting opinion in *Rummel v. Estelle*, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed.2d 382 (1980), and 79 COLUM. L. REV. 1119 (1979), in support of his contention that his eighth amendment claim must be decided solely on the basis of the maximum sentence imposed on him. In other words, Kido contends that we may not deal in possibilities and that we must assume that he has been sentenced to twenty years of loss of liberty, no more, no less.

We agree that we may not deal in possibilities and that we must deal in actualities. However, we disagree with Kido's assessment of the actualities.

Under the statutes relating to sentences, parole, and discharge, the only actuality Kido faced under the original sentence was that he would be confined at the Oahu Community Correctional Center for a maximum of six months while the paroling authority decided what to do with him. Considering that the legislature has classified the crimes committed as class A and class B felonies, such a consequence is not cruel and unusual punishment as applied to Kido. *Hutto v. Davis*, ___ U.S. ___, 102 S. Ct. 703, 70 L. Ed.2d 556 (1982) *rehearing denied*, March 22, 1982, 102 S. Ct. 1742; *Jones v. Purvis*, 646 F.2d 127 (4th Cir. 1981); *People v. Lanzillotti*, 79 A.D.2d 618, 433 N.Y.S.2d 476 (1980); *State v. Gaddy*, 24 Ariz. App. 477. 539 P.2d 951 (1975); *State v. Stadie*, 112 Ariz. 196, 540 P.2d 668 (1975), *cert. denied*, 425 U.S. 974, 96 S. Ct. 2174, 48 L. Ed.2d 798 (1975); Annot.. 33 A.L.R.3d 335 (1970).

What the paroling authority might do is not an actuality. As previously noted, the sentencing options available to the paroling

authority in Kido's case range from a maximum of twenty years in the department's custody to immediate and complete discharge from liability.

We recognize that in his April 30, 1981 Decision and Order, the trial judge found as a fact:

13. A person in defendant's circumstances if sentenced under the provisions of § 706-659, H.R.S., can reasonably expect the Paroling Authority to fix a minimum term of between six to eight years.

That finding is based entirely on the testimony of the probation officer as follows:

Q. Now, I understand that somewhere along the line in this course of investigation or preparation, you made a telephone call to the Parole Board?

A. Yes.

Q. And this was regarding what question?

A. To get an idea of what the minimum sentence might be set at in this case.

Q. Did you get an idea of that from the Parole Board?

A. I was told that based on the somewhat limited information I did give the person, that it would be reasonable to say that the minimum term would be set at six to eight years.

Q. When you say "limited information," what information did you give the Parole Board?

A. I informed the person that the defendant had no prior record and informed him of the nature of the offenses and also that he had a good home and employment history.

Q. And did you also inform them that he was under — potentially exposed to a mandatory 20-year sentence?

A. Yes.

\* \* \* \* \*

Q. Now, who at the Parole Board did you speak to, as far as — you don't have to testify to a name — but as far as the authority.

A. I spoke to Mr. Earl Chun who is the parole and pardon administrator.

Q. I see. Now, under the circumstances that you described to

him, did you suggest to him that perhaps the Parole Board should consider a lesser minimum term?

A. I did not suggest that to him. I didn't mention the defendant's name.

Q. I see.

A. Or discuss it in detail with him.

Q. I see. Okay. So you gave him, then, cursory information with respect to Mitchell Kido then, is that correct?

A. Yes.

Q. And it was his opinion that under those circumstances that a eight-year minimum would be set for this kind of —

A. Approximately six to eight years.

Clearly, the trial judge's finding was based on hearsay and speculation. We decline to decide the constitutional issue in this case on the basis of such a finding, especially since the trial judge refused to allow the testimony of the best witness available on the subject — the chairman of the paroling authority.

In our view, until the paroling authority performs its function under HRS § 706-669, examination of the entire sentence for eighth amendment compliance is premature. When the paroling authority's decision is made, Kido may, upon proper request, have the entire sentence examined for eighth amendment compliance. *State v. Melear,* 63 Haw. 488, 630 P.2d 619 (1981). In that connection, however, we cite with approval the suggestion in *Hutto v. Davis, supra,* and *Rummel v. Estelle,* 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed.2d 382 (1980), that for crimes concededly classified and classifiable as felonies, the length of the sentence actually imposed is a matter of legislative prerogative and the judiciary should not interfere except in extreme cases.

The second and final issue is, whether the trial judge may stay a mittimus for any reason other than the fact that an appeal is pending. Rule 38(a), HRPP; HRS § 641-14. The answer is yes. The court has inherent power to suspend the execution of the sentence, if the necessities of the case require it, until a contemplated motion for relief is heard and disposed of. 18 Am. Jur.2d, *Coram Nobis, Etc.,* § 25 (1965).

We reverse the September 15, 1981 Judgment, order the reinstatement of the May 1, 1981 Judgment, and remand for issuance of the mittimus.

*Thomas Pico, Jr. (Arthur E. Ross* on the briefs), Deputy Prosecuting Attorneys, for plaintiff-appellant, cross-appellee.

*Randall Y. Kunn Char (O'Brien & Char* of counsel) for defendant-appellee, cross-appellant.